T.C. Memo. 1998-286

UNITED STATES TAX COURT

TIM H. CUSICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4186-96.                    Filed August 5, 1998.

<u>Marc K. Sellers</u> and <u>Paul A. Stamnes</u>, for petitioner.

<u>Wesley F. McNamara</u>, for respondent.

MEMORANDUM OPINION

PARR, <u>Judge</u>:    Respondent determined a $156,139 deficiency in petitioner's 1992 Federal income tax and additions to tax

under sections 6651(a)[1] and 6654(a) in the amounts of $39,035 and $6,806, respectively.

After concessions, the issues for decision are: (1) Whether for 1992 petitioner is entitled to deduct 50 percent of the substantiated expenses incurred for certain rental real estate. This turns on whether petitioner's rental real estate activities were conducted as a partnership. We hold that petitioner's rental real estate activities were conducted as a partnership, and he is entitled to deduct 50 percent of the expenses incurred. (2) Whether for 1992 petitioner is liable for an addition to tax pursuant to section 6651(a). We hold he is. (3) Whether for 1992 petitioner is liable for an addition to tax pursuant to section 6654(a). We hold he is.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioner resided in Portland, Oregon.

Background

In April 1987, petitioner acquired a 50-percent interest in real property located at 208 Oak Street in Ashland, Oregon (208

---

[1]   All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Oak Street). The remaining 50-percent interest in 208 Oak Street was acquired by Lance K. and Elizabeth A. Pugh (the Pughs).[2]

The purchase price for 208 Oak Street was $195,000. Petitioner and the Pughs were each responsible for half of the purchase price. In addition, petitioner and the Pughs agreed to share profits and losses from 208 Oak Street equally.

Petitioner and the Pughs acquired 208 Oak Street to provide a venue for a local theater company. A plan to transfer 208 Oak Street to the theater company was abandoned for several reasons, and petitioner and the Pughs decided to rent office space in the property to a variety of month-to-month tenants.

At different times during 1992, petitioner and Pugh each handled the management of 208 Oak Street. The management of 208 Oak Street was difficult and required a significant amount of time. Petitioner and Pugh not only maintained books and records and collected rent, but also performed maintenance tasks such as fixing backed-up toilets and assisting tenants who were locked out of their offices.

In 1991, petitioner and the Pughs purchased a second property located at 310 Oak Street in Ashland, Oregon (310 Oak Street),[3] for $775,000. The main tenant in 310 Oak Street was a

---

[2] References to Pugh are to Lance K. Pugh, and references to Mrs. Pugh are to Elizabeth A. Pugh.

[3] The properties located at 208 Oak Street and 310 Oak
(continued...)

supermarket.  Petitioner and Pugh collected rent for 310 Oak Street, but the supermarket had its own repair people who provided maintenance for the building.

Petitioner and the Pughs contributed equally to the purchase price of 310 Oak Street.  In addition, petitioner and the Pughs orally agreed to share the profits and losses from 310 Oak Street equally.

In November 1992, petitioner and the Pughs sold 310 Oak Street for $875,000 under an installment contract.  The proceeds received in 1992 from the sale of 310 Oak Street were split equally between petitioner and the Pughs.

In order to keep their ownership interests equal, petitioner and the Pughs split proceeds from the Oak Street properties equally and attempted to share expenses as equally as possible. This was accomplished through an informal system where petitioner and the Pughs mentally recorded who paid for which expenses. This system generally kept the shared expenses equal.

All funds relating to the Oak Street properties were kept in separate property management bank accounts (the accounts).  All income from the Oak Street properties was deposited in the accounts, and all expenses were paid from the accounts.

---

[3](...continued)
Street are referred to jointly as the Oak Street properties.

Petitioner was advised by his accountant that a partnership return was unnecessary for the Oak Street properties. Consequently, no partnership return was filed. Petitioner and the Pughs reported the profits and losses relating to the Oak Street properties on their own respective Federal income tax returns.

Issue 1. Rental Real Estate Deductions

Respondent determined that petitioner could not deduct 50 percent of the rental real estate expenses for the Oak Street properties and that, further, expenses claimed on petitioner's return had not been substantiated. Petitioner argues that the joint ownership and operation of the Oak Street properties constituted a partnership for Federal income tax purposes, in which he had a 50-percent interest. Accordingly, petitioner claims that he is entitled to deduct 50 percent of the expenses incurred for the Oak Street properties.

The principal issue for decision is whether petitioner may deduct 50 percent of the rental real estate expenses. Subsumed in this issue is the question of whether a partnership existed between petitioner and the Pughs for Federal income tax purposes. Petitioner bears the burden of proving, first, the existence of a partnership, and second, his entitlement to the claimed amounts of the rental real estate deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Whether a valid partnership exists for Federal income tax purposes is governed by Federal law. See Commissioner v. Culbertson, 337 U.S. 733 (1949); Lusthaus v. Commissioner, 327 U.S. 293 (1946); Commissioner v. Tower, 327 U.S. 280 (1946); Bergford v. Commissioner, 12 F.3d 166 (9th Cir. 1993), affg. Alhouse v. Commissioner, T.C. Memo. 1991-652; Community Bank v. Commissioner, 819 F.2d 940, 942 (9th Cir. 1987), affg. 79 T.C. 789 (1982); Frazell v. Commissioner, 88 T.C. 1405, 1412 (1987); Wheeler v. Commissioner, T.C. Memo. 1978-208.

A partnership, for Federal income tax purposes, is defined in section 761(a) as "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this * * * [subtitle], a corporation or a trust or estate." See also sec. 7701(a)(2). The term "partnership" as defined by the Internal Revenue Code is broader in scope than the common law meaning of partnership, and may include groups not traditionally considered partnerships. Sec. 1.761-1(a), Income Tax Regs.

A partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is a community of interest in the profits and losses." Commissioner v. Tower, supra at 286. Generally, "each partner contributes one or both

of the ingredients of income--capital or services." Commissioner
v. Culbertson, supra at 740.

Whether parties have formed a partnership is a question of
fact, and while all circumstances are to be considered, the
essential question is whether the parties intended to, and did in
fact, join together for the present conduct of an undertaking or
enterprise. Luna v. Commissioner, 42 T.C. 1067, 1077 (1964);
Gabriel v. Commissioner, T.C. Memo. 1993-524; see also
Commissioner v. Tower, supra at 287.

In deciding whether two or more persons have formed a
partnership, the Supreme Court has stated:

> The question is not whether the services or
> capital contributed by a partner are of sufficient
> importance to meet some objective standard * * * but
> whether, considering all the facts--the agreement, the
> conduct of the parties in execution of its provisions,
> their statements, the testimony of disinterested
> persons, the relationship of the parties, their
> respective abilities and capital contributions, the
> actual control of income and the purposes for which it
> is used, and any other facts throwing light on their
> true intent--the parties in good faith and acting with
> a business purpose intended to join together in the
> present conduct of the enterprise. * * * [Commissioner
> v. Culbertson, supra at 742.]

See also Luna v. Commissioner, supra at 1077-1078.

Recognition of a partnership for Federal tax purposes also
requires that the parties conduct some business activity. See
Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 514-517
(7th Cir. 1980), affg. 72 T.C. 521 (1979); Frazell v.
Commissioner, supra at 1412. While it is well settled that mere

coownership of property does not create a partnership for Federal income tax purposes, see Estate of Appleby v. Commissioner, 41 B.T.A. 18 (1940), affd. 123 F.2d 700 (2d Cir. 1941), coowners may also be partners if they or their agents carry on the requisite degree of business activities, Hahn v. Commissioner, 22 T.C. 212 (1954); Bentex Oil Corp. v. Commissioner, 20 T.C. 565 (1953); Estate of Winkler v. Commissioner, T.C. Memo. 1997-4; Gabriel v. Commissioner, supra; Marinos v. Commissioner, T.C. Memo. 1989-492; Powell v. Commissioner, T.C. Memo. 1967-32. Section 1.761-1(a), Income Tax Regs., provides as follows:

> A joint undertaking merely to share expenses is not a partnership. For example, if two or more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. * * * [Emphasis added.]

The arrangement between petitioner and the Pughs is a joint venture carrying on a "business, financial operation, or venture" and therefore falls within the literal statutory definition of partnership. By the Commissioner's own regulation, the arrangement is not taken out of this classification simply

because petitioner and the Pughs owned the rental real estate as tenants in common. See id.

The regulations and relevant case law indicate that the distinction between mere coowners and coowners who are engaged in a partnership lies in the degree of business activity of the coowners or their agents. Estate of Winkler v. Commissioner, supra; Gabriel v. Commissioner, supra; Marinos v. Commissioner, supra.

On the basis of the credible testimony of petitioner and Pugh, we find that petitioner and the Pughs were engaged in a rental real estate venture involving the Oak Street properties. Petitioner and Pugh testified, repeatedly, that their intent was to form a "50-50" partnership and share all profits and losses equally. Not only was this their intent, but they did in fact share all profits and expenses relating to the Oak Street properties equally. The degree of business activity exhibited by petitioner and the Pughs in conducting their rental real estate activities causes us to characterize the relationship as a partnership. Thus, on the basis of all the facts and circumstances of this case, we find that petitioner in good faith and acting with a business purpose intended to join together with the Pughs in the present conduct of an enterprise. See Commissioner v. Culbertson, 337 U.S. 733 (1949); Luna v. Commissioner, supra.

Respondent emphasized the fact that certain partnership formalities, including a written partnership agreement, were not present in this case. We do not find the absence of such formalities to be fatal to the existence of a partnership. As the Supreme Court stated in Commissioner v. Culbertson, supra at 744-745:

> If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. * * *

See also Estate of Winkler v. Commissioner, supra.

Respondent argues that even if the rental real estate activities constitute a partnership for Federal income tax purposes, the record does not contain sufficient evidence to support a determination of petitioner's basis in his partnership interest at the end of 1992. We disagree. The amount paid for the Oak Street properties is in the record. Furthermore, the Pughs, petitioner's partners, were able to prepare their 1992 Federal income tax return reporting income and expenses from the Oak Street properties.

Petitioner asserts that in addition to all stipulated expenses and adjustments, he is entitled to deduct 50 percent of the partnership expenses incurred during 1992 in the following amounts:

208 Oak Street

|  | Total Expense | Petitioner's Share |
|---|---|---|
| Interest | $59,242 | $29,621 |
| Advertising | 934 | 467 |
| Insurance | 2,714 | 1,357 |
| Utilities | 9,728 | 4,864 |
| Meals & ent. | 352 | 176 |
| Taxes | 2,604 | 1,302 |
| Cleaning & supplies | 2,176 | 1,088 |
| Office & misc. | 2,096 | 1,048 |
| Repairs | 4,342 | 2,171 |
| Total expenses | 84,188 | 42,094 |

310 Oak Street

|  | Total Expense | Petitioner's Share |
|---|---|---|
| Interest | $81,914 | $40,957 |
| Taxes | 3,594 | 1,797 |
| Total expenses | 85,508 | 42,754 |

Deductions are strictly a matter of legislative grace, and the taxpayer has the burden of establishing entitlement to any deduction claimed. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer's burden of establishing his entitlement to a deduction includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The Court is not bound to accept unverified, undocumented testimony of the taxpayer. Id. Accordingly, section 6001 and the regulations promulgated thereunder require the taxpayer to maintain records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

To substantiate the above expenses, petitioner introduced a disorganized collection of checks, receipts, and barely legible utility bills in addition to his testimony.  Petitioner testified that it was not until the eve of trial that he was able to obtain these documents.  Under the circumstances, however, petitioner's efforts to obtain the documents he needed from Pugh both to accurately prepare his return and to substantiate his deductions at trial were minimal.

In addition, the checks submitted by petitioner did not equal the amounts of the deductions argued for by petitioner on brief for certain expenses.[4]  Therefore, the Court has examined the documents provided to substantiate petitioner's deductions and holds that petitioner is entitled to deductions in the following amounts.

For 208 Oak Street, petitioner substantiated $838.99 for advertising expenses, $2,396.52 for insurance, $9,146.98 for utilities, $394.50 for meals and entertainment, $2,604.97 for property taxes, $2,176.47 for cleaning and supplies, $2,096.36 for office and miscellaneous, and $4,362.32 for repairs and maintenance and is entitled to deduct $419.50, $1,198.26, $4,573.49, $157.80, $1,302.49, $1,088.24, $1,048.18, and

---

[4]    The amounts also differ from those originally reported on petitioner's return because, petitioner asserts, "those figures were based on estimates while the current figures are the actual amounts."

$2,181.16, respectively.  In addition, petitioner substantiated $59,242.08 of mortgage interest for 208 Oak Street and is therefore entitled to deduct $29,621.04.

For 310 Oak Street, petitioner substantiated $81,914.95 of mortgage interest and $2,057.24 in property taxes and is entitled to deduct $40,957.48 and $1,028.62, respectively.

Issue 2.  Addition to Tax Under Section 6651(a)

Respondent determined an addition to tax under section 6651(a) for delinquent filing of a return.

Section 6651(a) provides that if a taxpayer fails to file a return by its due date, including extensions of time for filing, there shall be an addition to tax equal to 5 percent of the tax required to be shown on the return for each month the failure to file continues, not to exceed 25 percent.  The addition to tax under section 6651(a) shall not apply, however, if the taxpayer can show that the failure to timely file the return was due to reasonable cause and not willful neglect.  Sec. 6651(a).

Petitioner did not request an extension of time to file his 1992 Federal income tax return.  Petitioner was required to file a 1992 Federal income tax return by April 15, 1993.  Secs. 6012, 6072.  Petitioner did not file his 1992 Federal income tax return until March 28, 1997.

Petitioner testified that he did not file his return until that time because he could not get the information he needed to

prepare it from Pugh.  Petitioner, however, did not ask Pugh to provide the information he claimed was necessary to prepare his return until about a year before trial.

The Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  Petitioner did not do what a reasonable and ordinarily prudent person would do under the circumstances and has failed to meet his burden on this issue. Accordingly, respondent's determination on this issue is sustained.

Issue 3.  Addition to Tax Under Section 6654(a)

Respondent determined an addition to tax under section 6654(a) for underpayment of individual estimated tax.  Petitioner failed to pay estimated tax during the year in issue, and he has offered no evidence to show that he qualifies for one of the exceptions provided in section 6654(e).  Thus, respondent's determination on this issue is sustained.

For the foregoing reasons,

Decision will be entered under Rule 155.