RIMM, Judge.
This is a local property tax matter involving the requirements that must be met to qualify land for farmland assessment under N.J.S.A. 54:4-23.1 to -23.23, the Farmland Assessment Act of 1964, hereafter “the Act.”
Plaintiffs, Paul, Daniel, and Hyman Wishnick, own 25.43 acres of land located on Route 537 in Upper Freehold Township. The property is designated as Block 35, Lot 7 on the municipal tax map. On July 30, 1993, plaintiff, Paul Wishnick, filed a verified application, form FA-1, with the municipal tax assessor, seeking farmland assessment qualification for the property for the 1994 tax year. In the application, Wishnick certified that in 1993 fifteen acres of the property were actively devoted to the growing of alfalfa hay, five acres were utilized as permanent pasture, and the remaining 5.43 acres constituted appurtenant woodland. On an attached supplemental form, Wishnick indicated that gross income from the fifteen acres of alfalfa hay totaled $600 for 1993.
At the request of the Division of Taxation, Charles Grayson, a certified tax assessor for another township and a former farmer, undertook inspections of various properties in Upper Freehold Township in 1993 to determine if they met the qualifications for farmland assessment. As part of that responsibility, Grayson inspected the Wishnick property on September 9,1993, specifically looking for evidence of alfalfa hay, the crop indicated on the farmland assessment application. Grayson found no evidence of any farming activity on the taxpayers’ property.
Following Grayson’s inspection, the municipality notified the taxpayers that their application for farmland assessment qualification had been denied. For the 1994 tax year, the township then assessed the subject property as follows:
Land: $236,700
Improvements: 51,900
Total: $288,600.
*599 In response, plaintiffs filed an appeal with the Monmouth County Board of Taxation contesting the assessment and seeking farmland assessment qualification. In a memorandum of judgment dated July 19, 1994, the county board denied farmland qualification and affirmed the assessment for the subject property.
On October 14, 1994, plaintiffs filed a complaint with the Tax Court of New Jersey, again challenging the assessment and seeking farmland qualification for their property. The issues of farmland qualification and valuation were bifurcated for trial. On December 11, 1995, the parties tried the farmland assessment qualification issue.
At trial, plaintiffs offered the testimony of two witnesses. First to testify was one of the plaintiffs, Paul Wishnick. Wishnick stated that his property consists of “29.34” [sic] acres of land and that twenty acres of that land “is farmable.” Wishnick testified that he owns and operates a retail grocery and liquor store on the property and that, as such, he is present on the property “all the time.” Wishnick explained that he employs a farmer, Robert Todd Gaum, to farm the property and that Gaum actually grew and harvested crops on only ten acres of the land. Wishnick further testified that his property had qualified for and received farmland assessment from the municipality for the 1988, 1989, 1990,1991,1992, and 1993 tax years.
Following Wishnick’s testimony, plaintiffs called Robert Todd Gaum as a witness. Gaum testified that he has farmed the subject property for the Wishnicks since 1992. Gaum stated that in May 1992 he planted approximately ten acres of tomatoes which he finished harvesting at the end of August. According to three receipts marked in evidence by the plaintiffs, Gaum received $1200 in gross income from the sale of tomatoes in July 1992. Gaum indicated that he may have received more income from the sale of tomatoes, but that these were the only receipts he could find from that time period. No income tax records were introduced.
Gaum also stated that, from the time he harvested the tomatoes in August 1992 until October 1993, there were no crops planted on *600 the property. According to Gaum, sometime after October 15, 1993, he did plant rye on the property in the same area where he had previously planted the tomatoes. On questioning by the court, Gaum indicated that he planted a total of thirty acres of rye on all of the property that he worked in 1993, including the ten acres he planted on plaintiffs’ land. Gaum testified that severe winter weather then damaged the rye crop, causing him to plow under the crop and plant soybeans in May 1994.
As support for that testimony, plaintiffs had marked in evidence a document dated October 15, 1993 and signed by Joseph Len-hardt. On direct examination, Gaum explained that the document was a receipt for forty bushels of rye seed and for the rental of Lenhardt’s planter in return for $550.
Plaintiffs also had marked in evidence two documents detailing the sale of soybeans by Gaum in December 1994. One document, dated December 2,1994 and signed only by Gaum, noted a sale of 110 bushels of soybeans to “Joe Lenhardt, Jr.,” for $532. The second document was a more detailed receipt dated December 29, 1994, from E.H. Tindall, Inc., showing a sale of 75.17 bushels of soybeans from Gaum to E.H. Tindall, Inc. for a total price of $378.74.
At the conclusion of plaintiffs’ case, counsel for defendant moved to dismiss plaintiffs’ claim for farmland qualification “on the basis that there was no income shown for 1993 that would qualify for the [1994] application____” The motion was denied, and defendant called Charles Grayson as its sole witness.
Grayson detailed his efforts to check on plaintiffs’ property. He explained that he chose to inspect the property on September 9, 1993, because of the statements on the application that plaintiffs were growing and harvesting fifteen acres of alfalfa hay. When he went to inspect the property, Grayson expected to see evidence that alfalfa was growing or had been recently cut. As indicated, he found no evidence of any farming activity. Grayson also testified that the planting season for rye in Monmouth County could begin as late as October.
*601 At the close of all the evidence and arguments, I reserved decision in the matter but made certain factual findings. I found that there was farmland activity in 1992 for ten acres and that the amount of gross receipts from the property in 1992 was $1200. Additionally, I concluded that while there was some farmland activity in 1993, there was no income realized in 1993 or in any subsequent year from the 1993 farmland activity. Finally, I determined that there was farmland activity on ten acres of the subject property in 1994 and that gross receipts from that activity totaled approximately $910 for 1994. After making those factual findings, I directed the parties to brief the following three legal issues:
1. When a farmland application is submitted relating to one type of crop, and another type of crop is planted, is the application defective?
2. Can the two pre-assessment years be averaged to satisfy the statute’s income requirement when there is no income attributable to one of those two years?
3. Are plaintiffs excused from having to satisfy the statute’s income requirement if adverse weather resulted in no income from farmland activity in 1993?
The parties have submitted their briefs.
After considering the applicable case law and the public policy behind the Act, I hold that plaintiffs’ farmland assessment claims are to be tested solely by whether the subject property qualifies for farmland assessment according to the specific agricultural use claimed on plaintiffs’ application for farmland qualification for 1994. This decision is necessary in order to avoid burdening municipalities with unreasonable inspection responsibilities and to avoid thwarting the Legislature’s plan for controlling the granting of farmland assessments. Here, plaintiffs claimed that their property was actively devoted to the production of alfalfa hay. Therefore, no claim for farmland assessment may be based on the production of rye straw on plaintiffs’ property.
Article VIII, § 1, par. 1(b) of the New Jersey Constitution provides, in pertinent part, as follows:
The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural or horticultural use and to have been so devoted for at least the 2 successive years immediately preceding the tax year at *602 issue, shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural use____
[emphasis supplied.]
This provision was added as an amendment to the Constitution’s Tax Clause in 1963. To implement this provision, the Legislature adopted the Act. For property to qualify for farmland assessment under the Act, the owner of the property must submit an application to the municipal assessor on or before August 1 of the pre-tax year. N.J.S.A 54:4-23.13. If an extension of time is granted by the assessor because of a property owner’s death or illness, the taxpayer has only until September 1 of the pre-tax year to file the application. See N.J.S.A 54:4-23.6 and N.J.S.A 54:4-23.13.
Under N.J.S.A 54:4-23.14, the farmland assessment application must be submitted on a form prescribed by the Director of the Division of Taxation. N.J.S.A 54:4-23.14 also provides that
[a] certification by the landowner that the facts set forth in the application are true may be prescribed by the director to be in lieu of a sworn statement to that effect. Statements so certified shall be considered as if made under oath and subject to the same penalties as provided by law for perjury____
Following the submission of the application by the taxpayer, the assessor has until November 1 of the pre-tax year to review the application, inspect the property[1], and forward notice of disallowance of the claim to the taxpayer when the claim has been disallowed. N.J.S.A. 54:4-23.13 and N.J.S.A. 54:4-23.13b. Thus, the assessor has only a limited period of time within which to investigate the claims of taxpayers and to decide whether or not to grant farmland assessment.
In Interstate 78 Office Park, Ltd. v. Tewksbury Tp., 11 N.J.Tax 172 (Tax 1990), Judge Lario explained that the
requirement for the filing of a farmland assessment application is to notice the assessor as to the exact agricultural or horticultural use the owner is claiming and the facts relied upon in support thereof so the assessor may check it out and make *603 an informed determination whether the application sets forth a claim recognized by the act and whether the facts found by him support the claim---- When the assessor makes his physical inspection, naturally and logically, he is guided by the application as to what facts he should investigate.
[Id. at 181.]
In the Interstate 78 case, the taxpayer had filed a farmland assessment application for the 1986 tax year.[2] On the application, the taxpayer claimed qualification for farmland assessment based on the growth and harvest of alfalfa hay on the property. Inspection of the property by the assessor revealed that the taxpayer’s land did not qualify for farmland assessment based on the growth and harvest of alfalfa hay. The assessor denied the application and the County Board of Taxation affirmed.
The taxpayer appealed to the Tax Court, arguing that it was entitled to prove farmland qualification by showing that, for the years in issue, the lessee of the property had operated a farm devoted to the production and sale of horses. That activity was not claimed on the 1986 application or prior applications and was never investigated by the assessor when he made his inspections of the property in the fall of 1985.
Judge Lario rejected the taxpayer’s argument, holding that the taxpayer was only entitled to prove qualification for farmland assessment for its property based on the specific use it had listed on its application. Judge Lario found that, in conducting his investigation in the fall of 1985, the municipal assessor had justifiably relied on the statements of the taxpayer on the application and that those statements had prejudiced the municipality’s investigation and ability to respond to subsequent claims of other uses by the taxpayer. In making his ruling, Judge Lario emphasized that
[t]he farmland application is a necessary factual document without which an assessor cannot make an informed determination whether to grant or deny the application as required by the Legislature. In reaching his determination, an *604 assessor is entitled to rely on the claims and data contained therein. To conclude otherwise would make the farmland application a sham, rendering it ineffectual and meaningless; it would completely thwart the Legislature’s scheme of controlling the granting of farmland assessments as evidenced by the [farmland assessment] act’s requiring the filing of the application and its approval or disapproval in the pretax year.
[Id. at 185.]
In plaintiffs’ brief, they attempt to distinguish the facts in the Interstate 78 case from the facts in the present case. Plaintiffs assert that
[i]n Interstate 78, there was no indication whatsoever of horse breeding activity on plaintiffs 1985 and 1986 farmland applications. Most importantly, horse breeding is a different use than the planting and harvesting of crops. In the instant case, there is no use difference alleged; it was simply a matter of a different crop being planted.
Thus, according 'to the plaintiffs, it should not matter that they listed alfalfa hay on their 1994 application and never planted that crop. As long as they planted some kind of crop, plaintiffs argue that the municipality was not prejudiced in its investigation. Plaintiffs contend that,
regardless of whether rye straw or alfalfa hay was going to be planted, there would have been no indication on September 9,1993 that the property was being farmed. However, had Grayson inspected the property subsequent to October 1993, plaintiffs’ application would have “guided Grayson ... as to what facts he should investigate.” ... Upon inspecting the property and searching for alfalfa, Grayson most certainly would have discovered that rye straw had been planted instead.
Plaintiffs misunderstand the actual effect that the statements on their application had in the present ease. At trial, Grayson testified that he specifically chose to inspect the property on September 9, 1993, because of the statements on the application that plaintiffs were growing and harvesting fifteen acres of alfalfa hay. Grayson had reviewed the taxpayers’ application and chose September 9 because he expected to see evidence that alfalfa was growing or had been recently cut on the property. Grayson also noted that the planting season for rye in Monmouth County could begin even in October. Thus, if Grayson had known that the taxpayers were claiming qualification based on a rye crop and not on an alfalfa hay crop, he would have made his inspection in October when he would have expected the rye crop to have been planted. In other words, as in Interstate 78, the statements on *605 the application prejudiced the assessor’s ability to gather information and defend his decision to deny farmland assessment for the property.
This is a particular problem in the present case. The farmland application listed fifteen acres of alfalfa. Paul Wishnick testified that ten acres of rye were planted in 1993. Robert Todd Gaum testified that he planted ten acres of tomatoes in 1992 and that he planted rye in 1993 “in the same area.” Problems of credibility are thus raised, demonstrating vividly the importance of the assessor’s right to rely on the application and emphasizing the correctness of the rationale of the opinion in Interstate 78.
In this case, the municipality had no notice until well after the alleged rye crop had been allegedly destroyed and no income was realized that plaintiffs were claiming to have planted rye on their property. Thus, the municipality could not conduct a proper inspection of the property at the relevant time. Not aware of the taxpayers’ claim of a different crop, the municipality could do nothing to refute that claim until it was too late to make a firsthand determination of whether the claim was true. The assessor was unable to inspect the property at the proper time, was unable to take photographs at the relevant time, was disadvantaged in any attempt to find fresh, disinterested witnesses who could refute the taxpayers’ claims, and, as the record of the trial reveals, was left with virtually no response to plaintiffs’ claim of a different use.[3]
Under the Act, the assessor has only a limited three month period within which to review all farmland assessment applications. The farmland assessment application is specifically designed to reduce the time, effort, and expense required by munici *606 pal assessors to determine farmland qualification claims during that limited period for review. N.J.S.A. 54:4-23.14 even requires landowners to certify that the facts set forth in the application are true. Such certified statements are considered as if made under oath and are subject to the same penalties as provided by law for perjury.
If, as plaintiffs claim occurred in this case, a taxpayer decides to change the qualifying crop specified on the application in the period following the application’s submission, the taxpayer should bear the minimal burden of notifying the assessor of the change. This would allow the assessor to make an inspection at the appropriate time and would give the assessor a fair opportunity to accumulate evidence in the event the assessor is later required to defend a decision to deny qualification for the property.
“[T]he Farmland Assessment Act is akin to tax exemption statutes which must be strictly construed against the party claiming the exemption----” Califon Bor. v. Stanegate Properties, 2 N.J.Tax 153, 163 (Tax 1981). To permit a taxpayer to come into court and prove a use different from the use certified on the farmland assessment application not only rewards the taxpayer for a lack of diligence, but also burdens the municipality with greater responsibilities in order to avoid possible time-consuming and expensive litigation in the future.
The result here is the best way to ensure that the municipality is not placed at a disadvantage at a trial of the qualification issue which may take place years after the relevant time period and events.
The taxpayer has the burden of proof to establish qualification for farmland assessment. Miele v. Jackson Tp., 11 N.J. Tax 97, 99 (App.Div.1989); Cherry Hill Indus. Properties v. Voorhees Tp., 186 N.J.Super. 307, 312, 452 A.2d 673 (App.Div.), aff'd as mod. on other grounds, 91 N.J. 526, 453 A.2d 850 (1982). None of the evidence proves that there was ever any alfalfa hay planted on plaintiffs’ property in 1993, the specific crop claimed on plaintiffs application. The discrepancy between the application and the *607 alleged crop results in the conclusion that the subject property is not entitled to farmland assessment qualification for the 1994 tax year. An order will be entered, accordingly, dismissing the plaintiffs’ claim for farmland qualification and scheduling a hearing on valuation and discrimination.
The remaining two legal issues that I asked the parties to brief at the conclusion of the trial are rendered moot by this decision.

 In recent amendments to the Farmland Assessment Act, the Legislature made on-site inspection of the property under review mandatory for assessors "at least once every three years" and allowed municipalities to impose up to $25 in fees for such inspections on the taxpayer applying for qualification. L.1995, c. 276, § 5 (N.J.S.A. 54:4-23.13).

 In addition to the 1986 tax year issue, the case also involved the revocation of farmland assessment for the 1985 tax year through an added assessment process, as well as qualification for the 1987 tax year based on a different application where horse farming was listed as a claimed use.

 An argument could be made that the municipality would be in the same position if a taxpayer planted and harvested before the August 1 application date. While no crop would be present on the land at that time, the municipality could discover the facts by a meaningful investigation. Cuttings might still be present on the ground or some other evidence of planting might exist. Here, because of the taxpayer's statements, there was simply no way, short of making repeated visits to the property, for the assessor to discover the facts.