PER CURIAM.
Plaintiff, Consolidated Rail Corporation (Conrail), appeals from an order entered in the Tax Court on December 3, 1999, denying its motion for summary judgment; granting summary judgment in favor of defendant, State of New Jersey, Director of Division of Taxation (Director), dismissing Conrail’s complaint against the Director; and granting summary judgment in favor of defendant, Town of Kearny (Kearny), affirming the Essex County Board of Taxation’s judgment, assessing locally a building owned by Conrail located on property known as lot 46, block 284, Kearny, for the tax year 1997. The Tax Court rejected Conrail’s contention that the subject building should be assessed and taxed by the Director as Class II railroad property for 1997, pursuant to the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 to -77 (the Act), and thereby be exempt from local assessment and taxation by Kearny.
Conrail, a Pennsylvania Corporation, is a railroad, transporting freight in interstate commerce, doing business in New Jersey. The property owned by Conrail contained on lot 46, block 284 consists of approximately 112.305 acres and is more commonly *381 known as the “Meadows Yard Complex.” The subject of the parties’ dispute is the taxation of a structure built by Conrail upon that property and completed in 1996.
At issue is whether, for the tax year 1997, Kearny properly assessed the newly-constructed building and subjected the building to local property taxation, or, whether the Director was required to assess and impose the State railroad property tax on the building in accordance with the Act, which would then exempt the building from local taxation.
On September 7, 1994, the Planning Board of the Town of Kearny approved the site plan and variance application of Conrail for removal of existing office trailers in the Meadows Yard Complex and the construction of a new two-story office building and control center to be used in conjunction with Conrail’s truck traffic control system. The building was to be used as an office for Conrail employees and contract persons responsible for overseeing movement of tractor trailers and containers on flat cal's at Conrail’s Kearny terminal; for preparation of paperwork relating to shipments arriving to and departing from the terminal; and as a sign-up point for railroad employees and contract persons working in and around the terminal.
After obtaining municipal approval, Conrail undertook construction of the building. As of January 1, 1996, the building was under construction and the skeleton of the structure had been erected. The construction was completed on or about August 14, 1996. The newly-constructed building replaced some twenty or thirty trailers that had been removed from the property prior to the commencement of the construction, all of which had been previously assessed as Class II railroad property under the Act. In November 1996, the building was inspected by representatives of the Director and determined to be in use for railroad purposes.
The Act, successor to railroad property tax legislation originally enacted in 1884, is designed to “commit the assessment of property used for railroad purposes to a state agency to avoid application of varying methods and standards of valuation by municipalities in which the property is located.” New York Sus *382 quehanna & W. Ry. Corp. v. Hardyston Tp., 8 N.J.Tax 626, 632 (Tax 1987). The Act divides railroad property into three classes. Class I consists of the main stem of the railroad; Class II consists of other real estate used for railroad purposes; and Class III consists of facilities used in passenger service. N.J.S.A. 54:29A-17. Under the Act, Class I and Class III property are exempt from both local property taxation and the railroad property tax. N.J.S.A 54:29A-11. The subject building falls into the Class II category, which is subject to the railroad property tax provided under the Act. N.J.S.A. 54:29A-17.
However, in order to be classified for railroad use, the Act provides certain guidelines to be followed by the applicant. N.J.S.A, 54:29A-44(a), captioned “Returns of Information,” provides:
On of before March first in each year, every taxpayer shall return to the [Director] statements or schedules showing the character and value of all 'its property, as it existed on the first day of January preceding, its capitalization and its indebtedness.
The Division of Taxation’s corresponding regulations provide, in pertinent part:
(a) Every taxpayer must, on or before March 1 of the pretax year, file with Property Administration statements and/or schedules showing:
1. The character and value of real property owned or leased by the taxpayer on the first day of January of the pretax year;
2. The capitalization and the indebtedness of the taxpayer as of the same date.
(b) Property Administration has developed and maintains a perpetual inventory of all property owned by each railroad or system in the Slate of New Jersey and only changes in the ownership, character or value of such property are required to be reported annually. Such annual returns of information must be submitted to Property Administration on forms R.R.51 through R.R.45 which are available from said office.
(c) In addition to the statements and schedules above described, the taxpayer must submit a statement entitled, “Completion Reports and Plans”. Such statement must include:
1. Progress reports on all projects involving real property undertaken during the pre-tax year; and
2. Completion reports on all projects completed during the pre-tax year.
[N.J.A.C. 18:2:8—8.1(a)—(c).]
Upon being provided the information on the return required by N.J.S.A. 54:29A-44(a), the Director then, “[o]n or before Novem *383 ber 1 in each year,” is required to classify the properties and “determine the true value, as of the preceding January 1, of all Class II property used for railroad purposes in this State.” N.J.S.A. 54:29A-17. Moreover,
[u]pon completion of [the Director's! .. classification and valuation of Class II property, but not later than November 10 m each year, the [Director] shall deliver a detailed statement thereof to each taxpayer
[/¿>fU]
Once in possession of the detailed statement required by N.J.S.A. 54:29A-17,
[a]ny taxpayer may, prior to December 1 in each year, inspect the [Director’s! classifications and valuations and confer informally with the [Director! as to the correctness of such classifications and valuations so that any errors may be corrected prior to the [Director’s! assessment of Class II property.
[N.J S.A. 54:29A-18.1.]
Then,
[f]ollowing any such informal conference with the taxpayer and not later than December 15 in each year the | Director! shall deliver to the taxpayer a detailed statement of the taxpayer’s Class II property together with the assessment of such property for the following tax year at the rate hereinabove established.
[Ibid. |
The Act addresses the situation where property is omitted from the information return required by N.J.S.A 54:29A-44(a), as follows:
Whenever property subject to taxation under this act has or shall have been omitted from assessment by failure of the taxpayer to include it in a return of information, or otherwise, the [Director] may, if he finds that such property has been omitted from his assessment, cause such property to be assessed for any omitted years in accordance with the provisions of this act.
[N.J.S.A. 54:29A-25(b).]
On or about March 1, 1996, Conrail filed with the Director the information return, as required by N.J.S.A 54:29A-44(a). However, the return did not contain a description of the subject building nor a reference to its construction. Moreover, Conrail failed to file progress or completion reports concerning the subject building, pursuant to N.J.A.C. 18:23—8.1(c)(1) and (2).
Since the building was not listed as being subject to Class II railroad property assessment and taxation as of the applicable 1997 assessment date, October 1, 1996, Kearny imposed a 1997 *384 local property assessment on the subject building in the amount of $900,100.
On or about November 10, 1996, in compliance with N.J.S.A. 54:29A-17, the Director delivered to Conrail a detailed statement of the properties that were to be assessed as railroad property for the tax year 1997. That statement did not include the subject building, although it did include the real property on which the building was constructed.
By letter to the Director dated November 20, 1996, Conrail advised:
In accordance with N.J.S.A. 54:29A-18.1 enclosed are the architectural plans for the office facility within the “Meadows Yard” in the Town of Kearny, Hudson County, NJ. Conrail was just granted [al temporary certificate of occupancy. The enclosed site and architectural plans should be enough to provide a framework for valuation.
By letter to counsel for the Director dated December 5, 1996, Conrail requested that the new administration building be included in the 1997 Class II valuation, noting that the skeletal structure was completed as of January 1, 1996. By letter to Conrail dated January 7, 1997, the Director declined to include the building in Conrail’s 1997 Class II valuation, concluding the building was not in use as Class II property as of January 1, 1996 since it was still under construction.
On or about March 3, 1997, Conrail filed a complaint in Tax Could; against the Director, docket number 664-97, seeking judgment requiring the Director to assess the building as Class II railroad property for the tax year 1997. Conrail also appealed Kearny’s local assessment to the Essex County Board of Taxation. The Board affirmed Kearny’s assessment. On October 6, 1997, Conrail filed a complaint in Tax Court against Kearny, docket number 6315-97, contending the building, as Class II property, was exempt from local property tax assessment, and sought cancellation of the assessment. An order was entered on March 25,1998, consolidating these Tax Court actions.
All parties moved for entry of summary judgment. The motions were argued in the Tax Court on October 30, 1998. On October 25, 1999, Judge Kuskin issued a written opinion, memori *385 alized by an order and judgment executed on December 3, 1999, denying Conrail’s motion for summary judgment and granting the summary judgment motions of the Director and Kearny. The complaint against the Director was dismissed, and the County Board of Taxation’s assessment decision was affirmed.
The motion judge concluded that “[f]iling an information return pursuant to N.J.S.A. 54:29A-44(a) is an integral and essential prerequisite to qualification for the exemption.” The judge also noted that “[u]nder N.J.A.C. 18:23—8.1(b), the railroad must report only changes ‘in the ownership, character or value’ of its property on an annual basis because the Director maintains an inventory of railroad property.”
In analyzing the effect of Conrail’s failure to comply with N.J.S.A. 54:29A-44(a) and N.J.A.C. 18:23-8.1(b), the judge stated, in pertinent part:
As described above, Conrail failed to include the subject partially-completed building in its March 1, 1996 information return. As a result, the Director had no opportunity to inspect, classify and value property during the period March 1 through November 1, 1996. Conrail contends that, by November 20, 1996, it brought to the Director’s attention the omission of the partially completed building, and that a correction of [the] Director’s detailed statement, so as to include the building, is permitted under N.J.S.A. 54:29A-18 1. Conrail further asserts that, under N.J.S.A. 54:29A-25(b), the Director has the right to impose an omitted assessment on property which a taxpayer failed to include in a March 1 information return, thus indicating that property is subject to inclusion as railroad property even after the November 1 detailed statement has been prepared. I reject these contentions for the following reasons.
The significance of the submission of the March 1 information return can be analogized to the significance of the submission of an application for farmland assessment under the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to -23.23.... An application for farmland assessment must be filed with the tax assessor by August 1 of each year, N.J.S.A. 54:4-23.13, and filing an annual application is one of the specific statutory requirements for farmland assessment qualification. N.J.S.A. 54.4-23.6(c)... Between the date of submission of the farmland assessment application and November 1 of each year, the assessor must make a determination as to whether farmland assessment will be allowed for the following year ..
Just as a municipal tax assessor is entitled to rely on the contents of a farmland assessment application in determining what investigation is necessary between the date of filing of the application and the November 1 deadline for notifying the taxpayer of disallowance of farmland assessment, so, too, the Director is entitled to rely on the information return submitted by a railroad in determining what investigation is required m order to classify and value each parcel of property *386 identified by the taxpayer. If a railroad were permitted to “correct” its information return after November 1, but before December 15, of each year so as to add property, the information return would cease to serve its function. The Director would not be able to rely on the return in classifying and valuing railroad property by November 1, as required by statute. When considered in the context of the one partially-completed building which Conrail seeks to add to its 1996 information return, the problem does not seem significant for the Director. If, however, every railroad could defer until after November 1 its decision as to which property to include in its list of properties subject to taxation under the Railroad Tax Law, the Director’s ability to make determinations as to classification and valuation by November 1 would be thwarted.
Inclusion of a property in a March 1 information return is, therefore, as essential to qualifying that property for the exemption from local property taxation under the Railroad Tax Law as is the inclusion in an application for farmland assessment of a property which a taxpayer seeks to qualify for assessment under the Farmland Assessment Act. Failure to file a farmland assessment application for a parcel of property by August 1 of any year precludes qualification.
N.J.S.A. 54:29A-18.1 does not permit a railroad company to “correct” the Director’s detailed statement of railroad property by adding properties. The statute refers only to correcting errors in the Director’s “classifications and valuations.” The Director makes these classifications and valuations in reliance on the March 1 information returns. Thus, only classifications and valuations relating to properly included in an information return may be “corrected.” Consequently, Conrail may not, in the guise of correction, add the subject building to its March 1, 1996 information return.
The provisions of N.J.S.A. 54:29A-25(b), which authorize the Director to impose omitted assessments on railroad property, do not suggest a different result. Under N.J.S.A. 54:4-23.13, an assessor may impose an added assessment on property which, because of a change in use between August 1 and December 31, ceases to qualify for farmland assessment. This does not permit a taxpayer, after August 1, to add a parcel of land to a farmland assessment application. Similarly, assessors’ rights to impose added assessments, under N.J.S.A. 54:4-63.12 to -40, do not expend the April 1 deadline for taxpayers (and municipalities) to file appeals under N.J.S.A. 54:3-21, including taxpayer appeals seeking exemption from taxation. N.J.S.A. 54:29A-25(b) should be interpreted in a manner consistent with these other statutes. Therefore, the Director’s right to impose added assessments on railroad property does not imply, or confer on a taxpayer, a right to supplement the taxpayer’s information return after March 1.
In order to obtain the benefit of the exemption from local property taxation provided by the Railroad Tax Law, Conrail was required to comply strictly with the requirements of the Law. It failed to do so. As a result, the Town of Kearny was entitled to assess the subject building for the tax year 1997 as of the applicable valuation date for that year, October 1, 1996. N.J.S.A. 54:4-23. The provisions of N.J.S.A. 54:29A-11, under which an assessment under the Railroad Tax Law is “in lieu of all other State or local taxation,” are inapplicable to the 1997 assessment of the building.
*387 I need not address the other contentions asserted by the Director and by Kearny, including their contentions that the subject partially-completed building was not used for railroad purposes as of January 1, 1996 and that such use was not anticipated as of that date.
On appeal, Conrail presents the following arguments for our consideration:

POINT I

A PARTIALLY-COMPLETED BUILDING UNDER CONSTRUCTION FOR RAILROAD PURPOSES ON CLASS II LAND AS OF JANUARY 1, 1996, WHICH REPLACED CLASS II PROPERTY, MUST BE ASSESSED AS CLASS II RAILROAD PROPERTY.

POINT II

THE DETERMINATION BY THE TAX COURT THAT FAILURE TO INCLUDE PROPERTY ON AN INFORMATION STATEMENT PURSUANT TO N.J.S.A. 54:29A-44(a) PRECLUDES ASSESSMENT OF THAT PROPERTY UNDER THE RAILROAD TAX LAW WAS INCORRECT.
A. The Longstanding Rules of Statutory Construction Demand That Conrail Be Allowed To Correct Its Information Return Prior To The Final Assessment To Include Omitted Property.
B. The Analogy Between the Railroad Tax Law And The Farmland Assessment Act Was Error and It Resulted In The Tax Court’s Erroneous Interpretation Of The Law.
C. The Tax Court Erred In Concluding That The Late Addition Of Omitted Property Would Thwart The Director’s Ability To Assess! ] Property.
D. Equity Demands That The Subject Building Be Assessed By The Director Pursuant To The Railroad Tax Law.
We consider these arguments in the order presented in Conrail’s brief.
I
Conrail argues that the Tax Court erred in declining to require the Division to classify the subject building as Class II property under the Act for the tax year 1997 because its fairly anticipated use, as of January 1, 1996, was for railroad purposes. Conrail states that the Tax Court failed to address this issue and contend we should conclude that the subject building, as a matter of law, was Class II property as of January 1, 1996, subject to taxation under the Act.
The facts strongly suggest that the building had a “fairly anticipated use” for railroad purposes. The building was constructed on Class II¡ real estate, and was built to replace 20 or 30 *388 office trailers previously located on the site. The site plan approval obtained from Kearny’s planning board referenced that the property was to be used for railroad purposes and the building, was subsequently designated as Class II property for the 1998 tax year. See New York Susquehanna & W. Ry. Corp. v. Hardyston Tp., supra, 8 N.J. Tax at 629-31 (The “fairly anticipated use” test for assessing property for railroad purposes under the Act focuses on the degree of certainty that property owned by a railroad will be used for railroad purposes in the future).
However, here the issue is whether the “fairly anticipated use” doctrine can be applied to a structure that did not exist in any prior form and was only partially built at the valuation date of January 1, 1996. The Director's argument that classifying partially-constructed buildings under the Act would lead to an unworkable result for both the State and the municipalities in which the property was situated, is persuasive. The Director can only, “[o]n or before November 1 in each year[,] ... determine the true value, as of the preceding January 1, of all Class II property used for railroad purposes in this State.” N.J.S.A. 54:29A-17. There is no “added assessment” provision in the Act that would allow the Director to further assess the property after the January 1 valuation date. Construction of the building was completed in August 1996. It is apparent that the assessed value of the building as of January 1, 1996 would be quite different from its assessed value as completed, as of August 1996. Conrail’s interpretation and proposed application of the “fairly anticipated use” doctrine to the subject building as Class II railroad property for tax year 1997 would lead to assessment at the value of the skeletal structure as of January 1. Under such an interpretation, even though the building was completed in August 1996, Conrail would be assessed and taxed in 1997, as Class II railroad property, based on the value of the building, as partially constructed, as of January 1, 1996. That would leave the building to be either assessed and taxed for tax year 1997 by the municipality at its true value as of October 1, 1996, or not taxed at all at its August 1996 value until tax year 1998. Accordingly, we conclude that applying the “fairly *389 anticipated use” standard to this matter is neither feasible nor equitable.
II
Conrail also argues that the Tax Court erred in concluding that the subject building could not be assessed under the Act because it was not included in the information return filed by Conrail pursuant to N.J.S.A. 54:29A-44(a).
N.J.S.A. 54:29A-25(b) clearly provides:
Whenever properly subject to taxation under this act has or shall have been omitted from assessment by failure of the taxpayer to include it in a return of information, or otherwise, the commissioner may, if he finds that such property has been omitted from his assessment, cause such property to be assessed for any omitted years m accordance with the provisions of this act.
[(Emphasis added).]
We conclude that, if not in the March 1 information return, it is within the discretion of the Director to either assess omitted property, or to allow such property to be assessed by the local municipality during the tax year for which the omission applies.
 When reviewing the discretionary act of an administrative agency, our scope of review is limited. As our Supreme Court has stated:
[W]e will not upset a determination by the Commission in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act.
[Campbell v. Dep’t of Civil Senv., 39 N.J. 556, 562, 189 A.2d 712 (1963).]
Our review of the record discloses nothing from which we could conclude that the decision of the Director to exclude the subject building from classification and assessment as Class II railroad property under the Act for tax year 1997 was arbitrary, capricious or unreasonable. There is also fair support in the record for the Director’s decision. As we have noted, assessment and valuation of partially-completed structures presents administrative difficulties for both the State and the municipalities in which they are located in view’ of the required valuation date. Moreover, in light of the March 1 information return requirement of the Act, and in applicable administrative regulations, and given the fact construe *390 tion of the building was commenced before March 1, we conclude the Director acted appropriately and consistent with the Act, as well as the intent of the assessment and tax structure of our State that buildings be valued, and assessed, at true value. See N.J.S.A. 54:4-1 (“All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter. Such property shall be valued and assessed at the taxable value prescribed by law”).
Affirmed.