KUSKIN, J.T.C.
Plaintiff filed corporation business tax (“CBT”) returns[1] for tax years 1992 and 1993 as an investment company. The Director determined that plaintiff did not qualify for that status and assessed additional tax. Plaintiff appealed the assessment to the Tax Court. Approximately one year later, while the appeal was pending, plaintiff filed an amended complaint abandoning its claim of investment company status. The amended complaint asserted that plaintiff was a financial business corporation, was not liable for the assessment, and was entitled to a refund of the taxes it paid as an investment company.
The Director moved for summary judgment dismissing the appeal. He asserted that, because plaintiff had not filed timely CBT returns as a financial business corporation or filed timely amended returns reporting that status: (1) in the absence of a preceding determination by him, the Tax Court had no jurisdiction to consider plaintiff’s claim of a filing status different from that reported in plaintiff’s filed returns, and (2) plaintiff could not make this kind of claim in the context of a tax appeal. Plaintiff resisted the motion and cross-moved for summary judgment on the following grounds: (1) in challenging the assessment on the basis of financial business corporation status, it simply was asserting an alternate legal theory which the court could and should consider; (2) as a financial business corporation, it was not liable for the taxes assessed by the Director and was entitled to a refund of taxes paid as an investment company; (3) the assessment for tax year 1992 was untimely because it was made more than four years after the filing of plaintiffs 1992 tax return; and (4) the doctrine *550 of equitable recoupment precluded collection by the Director of the tax year 1992 and 1993 assessments.
In a bench opinion of September 21, 2002, I ruled that the 1992 assessment was timely because it was made within the five-year period set forth in the statute then in effect, N.J.S.A. 54:10A-19.1.[2] I also ruled that the doctrine of equitable recoupment was not applicable because plaintiffs contentions did not involve an effort to set off or credit previous tax payments against the Director’s assessment. Finally, I ruled that, even if plaintiff could resist the assessment by asserting financial business corporation status, it could not obtain a refund because the time period for refund claims under N.J.S.A. 54:49-14[3] had expired at the time plaintiff asserted this status. I reserved decision on the remaining issue raised by the motions, that is, whether plaintiff could challenge the assessment on the grounds that plaintiff qualified for taxation as a financial business corporation. For the reasons set forth below, I hold that plaintiff may not do so, and, accordingly, I grant summary judgment to the Director and deny plaintiffs cross-motion for summary judgment.
The undisputed factual background to this matter is as follows. Plaintiff is a bank holding company domiciled and with principal offices in New Jersey. It is a wholly-owned subsidiary of Chemical Banking Corporation, a New York corporation. Its principal asset is stock of its subsidiary, Chemical Bank of New Jersey. For tax years 1992 and 1993, plaintiff filed CBT returns on September 23, 1993 and October 14, 1994, respectively. In those returns, plaintiff took the position that it was an investment company and calculated its CBT liability pursuant to the provi *551 sions of N.J.S.A. 54:10A-4(f). This statute defines an investment company as “any corporation whose business during the period covered by its report consisted, to the extent of at least 90% thereof of holding, investing and reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights and other securities for its own account....” Under N.J.S. A. 54:10A-5(d), the tax payable by an investment company for the years in issue was “measured by 25% of its entire net income and 25% of its entire net worth” [4] as opposed to 100% of entire net income and 100% of entire net worth which were, and remain, the bases for taxation of most corporations.
After auditing plaintiffs 1992 and 1993 returns, the Director issued a Notice of Assessment Related to Final Audit Determination dated February 11, 1999. This Notice imposed additional tax on the basis that plaintiff did not qualify as an investment company. Plaintiff filed a protest on May 11, 1999 in which it contended that it had borrowed money from its parent, on which interest was payable, and lent the money to its subsidiary. The latter loan was evidenced by interest-bearing notes, which plaintiff contended were held for investment purposes and should be considered “qualified investment assets” for purposes of determining whether plaintiff satisfied the criteria for investment company status.
The Director issued his Final Determination sustaining the tax assessment on November 1, 2000. Plaintiff appealed to the Tax Court on February 15, 2001 on the basis that the Director improperly denied qualification as an investment company. Almost one year later, on February 6, 2002, plaintiff filed an amended complaint in which it abandoned its claim of investment company status. The amended complaint asserted that plaintiff “should properly have been taxed as a financial business corporation under N.J.S.A. 54:10A-4(m) for 1992 and 1993,” and that, if it had filed its CBT returns as a financial business corporation instead of as an investment company, it would not have been liable *552 for any tax for 1992 or 1993. Plaintiff did not file a return as a financial business corporation for either year. However, in the context of settlement negotiations with the Director, on February 26, 2002 plaintiff submitted unsigned pro forma 1992 and 1993 financial business corporation tax returns.
N.J.S.A 54:10A-4(m) defines a “financial business corporation” as “any corporate enterprise which is (1) in substantial competition with the business of national banks and which (2) employs moneyed capital with the object of making profit by its use as money, through discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt” or engages in other similar transactions set forth in the statute. Under N.J.S.A. 54:10A-4(k)(2)(E)(iii) as then in effect,[5] in calculating its entire net income, a financial business corporation could deduct all interest paid by it to an affiliate corporation (under N.J.S.A. 54:10A-4(k)(2)(E), for corporations other than financial business corporations generally only ten percent of such interest was deductible).
The interest payable by plaintiff to its affiliated corporation (its parent) for tax years 1992 and 1993 exceeded the interest plaintiff received from its subsidiary by approximately $6,000,000 per year. If, therefore, in calculating its CBT liability, plaintiff could deduct all interest paid to its parent, plaintiff would have suffered a loss for each year and paid no tax based on net income.
A. Whether the Tax Court Has Jurisdiction To Consider Plaintiffs Claim of Financial Business Corporation Status.
The Director asserts that the Tax Court lacks jurisdiction to decide plaintiffs claim of qualification for financial business corporation status because the claim was not presented to him in the form of filed initial or amended tax returns, and, therefore, he did not take any action with respect to the claim. The Director relies on N.J.S.A 2B:13-2, which confers on the Tax Court “jurisdiction to review actions or regulations with respect to a tax matter of the following: (1) [a]ny state agency or official; (2) [a] county board *553 of taxation; (3) [a] county or municipal official,” (emphasis added), and N.J.S.A. 54:10A-19.2, which permits an “aggrieved taxpayer” to appeal to the Tax Court “within ninety days after any actim of the director made pursuant to the provisions of this act” (emphasis added).
The Director’s argument ignores the fact that this appeal is from his action in imposing a CBT assessment on plaintiff. Plaintiff need not, as a prerequisite to asserting a factual or legal argument in support of its appeal, first submit the argument to the Director and obtain a determination from him as to the merits of the argument. Therefore, this court has jurisdiction to determine whether plaintiff may challenge the Director’s assessment on the grounds of qualification as a financial business corporation. See Telepages, Inc. v. Baldwin, 9 N.J.Tax 30, 38 (Tax 1987) (rejecting a taxpayer’s contention that an administrative hearing in the Division of Taxation was required before the Director could shift the basis for imposing sales tax from the purchase of materials to resale of the materials).
B. Whether Plaintiffs Tax Return Filings As An Investment Company Preclude Its Claim of Financial Business Corporation Status.
In support of its contention that it may now assert qualification as a financial business corporation as a basis for challenging the Director’s assessment, even though it did not file tax returns in that capacity, plaintiff relies on decisions permitting the Director to assert alternative legal theories to support assessments. In Middlesex Water Co. v. Director, Div. of Taxation, 181 N.J.Super. 338, 3 N.J.Tax 233, 437 A.2d 368 (Tax 1981), the Director sought to impose sales tax on the installation of tangible personal property. In responding to the taxpayer’s contention that the installation service was exempt from taxation, the Director asserted, in the context of the appeal, a new alternative theory for a sales tax assessment. The Tax Court permitted the Director to assert the theory, stating as follows:
*554 In the instant ease the Director has presented his alternative defensive theory prior to the execution of the pretrial order. The alternative defensive theoiy arises from the same set of facts that gave rise to the additional assessment, i.e., the purchase and installation of utility equipment. The legal position taken by the taxpayers with respect to the taxability of installation charges may have an effect on the taxability of the purchase of the utility equipment. The proceedings before the Tax Court are de novo. The Director’s position has been made known to the taxpayers early enough to avoid surprise. There appeal to be no due process infirmities. Therefore, we conclude that the Director may assert alternative defensive theories in support of the additional assessment.
[Id. at 359, 437 A.2d 368.]
Similarly, in Telepages, supra, 9 N.J.Tax 30, the taxpayer challenged an assessment of sales tax on purchases of materials on the basis that the purchases were for purposes of resale. The Tax Court held that, in the context of the pending appeal, the Director could assert that the resale transactions were subject to tax where the assessment on the resales did not exceed the original assessment, and the taxpayer did not dispute the taxability of the resales or the amount or timeliness of the assessment. Id. at 37, 39. The court stated as follows:
Moreover, the Tax Court has held that, provided he meets due process requirements, and acts within the statutoiy period, the Director may use alternative theories to support an assessment of additional tax. Plaintiff has not contended that the additional assessment was untimely or that it failed to meet due process requirements. Moreover, as Judge Lasser noted in Middlesex [Water Co. supra, 181 N.J.Super., 338, 3 N.J.Tax 233, 437 A.2d 368], plaintiff is not prejudiced by permitting defendant to make alternative arguments since the Tax Court reviews proceedings de novo. And as in Middlesex, the Director here raised its alternative theories early enough to avoid surprise. Furthermore, as in Middlesex, the alternative theories here arise from the same set of facts that gave rise to the additional assessment.
[M at 38-39 (citations omitted)(footnotes omitted).]
On the basis of the Middlesex Water and Telepages decisions, plaintiff contends that it may assert its qualification for taxation as a financial business corporation as an alternative legal theory. Plaintiff argues (and I will assume for purposes of deciding the Director’s motion) that the very same facts which it previously described as qualifying it for taxation as an investment company, also qualify it for taxation as a financial business corporation. Thus, plaintiff argues that the Director will not be prejudiced by the late assertion of this alternative legal theory and that permit *555 ting assertion of the theory is consistent with the cases affording the Director the opportunity to assert alternative legal theories.
The Director responds to plaintiffs contentions as follows: 1) plaintiffs election to file as an investment company constituted a binding business decision which may not be changed after the deadline for filing amended tax returns; and 2) alternative legal theories have been permitted only as a defense by the Director to grounds for appeal asserted by a taxpayer, a circumstance not present with respect to plaintiffs contentions.
In General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980), our Supreme Court adopted the following language from the United States Supreme Court’s decision in Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974):
This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not ..., and may not enjoy the benefit of some other route he might have chosen to follow but did not. “To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.”
[General Trading, supra, 83 N.J. at 136-37, 416 A.2d 37.]
In support of this principle, our Supreme Court relied on Somerset Apartments, Inc. v. Director, Div. of Taxation, 134 N.J.Super. 550, 342 A.2d 520 (App.Div.1975). There, the Appellate Division held that a decision by seven partners to form a corporation as a nominee to hold title to an apartment complex in order to consummate a loan transaction could not be disregarded for tax purposes. Consequently, the apartment complex could not be excluded from the assets of the corporation in calculating its CBT liability.
 Here, plaintiff, in effect, asks the court to ignore plaintiffs filing of tax returns as an investment company and asserts that, if it had filed its 1992 and 1993 CBT returns as a financial business corporation, it would not have been liable for the taxes assessed by the Director and would not have owed the taxes it paid as an investment company. I reject plaintiffs arguments. To claim a changed filing status is not simply to assert an *556 alternative legal theory. A taxpayer’s election of filing status controls the entire taxing process. Filing status dictates the law and methodology to be employed by a taxpayer in determining tax liability, the reporting form to be used, the information to be provided, and the procedures to be followed and law to be applied in any audit by the Director. A taxpayer’s decision as to filing status, therefore, is a decision of the type contemplated by General Trading, is binding on the taxpayer, and may not be disregarded or revoked in the context of tax appeal proceedings. See Somerset Apts., supra, 134 N.J.Super. 550, 342 A.2d 520.
The importance of filing status is illustrated by N.J.S.A. 54:10A-4(f)(3) and the Director’s regulations. The statute expressly distinguishes between investment companies and financial business corporations. The regulations generally require corporate taxpayers, including investment companies, to file returns on Form CBT-100. N.J.A.C. 18:7-11.6(a)(l). A financial business corporation, however, must file its return on Form BFC-1, N.J.A.C. 18:7 — 1.16(g), a form similar to Form CBT 100, but addressing items of income and deduction specifically relevant to financial business corporations and banking corporations. Another regulation, N.J.A.C. 18:7-1.15(e), reflects the particular significance of filing as an investment company. This regulation provides:
An election to file as an investment company, once made, may only be revoked by the taxpayer within four years of the filing of the original return. The election to file as an investment company is a taxpayer election and may not be initiated by the Division of Taxation or granted by the Division outside the time frame prescribed.
{N.J.A.C. 18:7 — 1.15(e).]
The four-year period contained in the regulation is consistent with the four-year limit applicable since July 1, 1993 to additional assessments under N.J.S.A. 54:49-6b and to refund claims under N.J.S.A. 54:49-14. Cf. Treas. Reg. § 1.6013-1 (providing that: “For any taxable year with respect to which a joint [federal income tax] return has been filed [by a husband and wife], separate returns shall not be made by the spouses after the time for filing the return of either has expired.”); United States v. Guy, 978 F.2d 934, 937 (6th Cir.1992) (relying on the Regulation in *557 precluding the filing of a separate return after a joint return had been filed).
Plaintiff could have changed its tax status by filing amended returns during the applicable two or four-year period for refund claims set forth in N.J.S.A. 54:49-14 and N.J.A.C. 18:7-1.15(e), but it failed to do so then or thereafter. Plaintiff first asserted its qualification for filing status as a financial business corporation more than eight years after the date it filed its 1992 CBT return and more than seven years after the date it filed its 1993 return.
Plaintiffs effort, in the context of these appeals, to claim qualification for financial business corporation status after voluntarily electing to file its tax returns as an investment company is analogous to the efforts of a taxpayer, in the context of a local property tax appeal, to claim qualification for assessment under the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to — 23.23, on a basis different from that contained in the taxpayer’s application for farmland assessment. The Tax Court consistently has held that an applicant for farmland assessment is bound by the contents of the application, in the absence of a timely amendment.
In Interstate 78 Office Park, Ltd. v. Tewksbury Tp., 11 N.J.Tax 172 (Tax 1990), the taxpayer applied for farmland assessment on the basis of growing alfalfa and orchard grass hay. In signing the application, the taxpayer certified that the information set forth was true and correct. See N.J.S.A. 54:4-23.14 (providing for this certification). In appealing the assessor’s denial of the application, the taxpayer contended that it qualified for farmland assessment on the basis of the production for sale of horses. In refusing to permit this change in the claimed basis for qualification, the Tax Court rejected, as “without merit,” the taxpayer’s argument that “actual use is the sole criteria [sic] for determining farmland qualification.” Interstate 78 Office Park, supra, at 186. The court described the significance of the farmland assessment application as follows:
The farmland application is a necessary factual document without which an assessor cannot make an informed determination whether to grant or deny the application as required by the Legislature. In reaching his determination an *558 assessor is entitled to rely on the claims and data contained therein. To conclude otherwise would make the farmland application a sham rendering it ineffectual and meaningless; it would completely thwart the Legislature’s scheme of controlling the granting of farmland assessments as evidenced by the act’s requiring the filing of the application and its approval or disapproval in the pretax yeai\
[Id. at 185.]
In Wishnick v. Upper Freehold Township., 15 N.J.Tax 597 (Tax 1996), the court came to the same conclusion. There, the taxpayer applied for a farmland assessment on the basis of the growing of alfalfa hay. The assessor denied the application, and, at the trial of an appeal from the denial, the taxpayer acknowledged that no alfalfa hay was grown, but asserted that rye had been grown. Id. at 600. The rye crop was planted after the alfalfa hay should have been harvested. The Tax Court relied on Interstate 78, supra, in ruling against the taxpayer. The court specifically rejected the taxpayer’s argument that “[a]s long as they planted some kind of crop, ... the municipality was not prejudiced in its investigation.” Id. at 604.
Pio Costa II-Subtrust v. Riverdale Bor., 20 N.J.Tax 169 (Tax 2002), appeal docketed, Dkt. No. A6120-01T3 (July 29, 2002 App.Div.), relies on Interstate 78, supra, and Wishniclc, supra, in holding that cutting of wood in a timber stand different from the stand to which the farmland assessment application and woodland management plan referred would not qualify the property for farmland assessment. Cf. Ukranian Nat’l Urban Renewal Corp. v. Director, Div. of Taxation, 3 N.J.Tax 326 (Tax 1981) (refusing to grant exemption from CBT to a corporation mistakenly incorporated under Title 14A of the New Jersey Statutes instead of under Title 15, and rejecting the taxpayer’s argument that it met the requirements of Title 14A “in substance if not in form.” Id. at 329.).
The principles set forth in the farmland assessment cases were applied in a different context in Consolidated Rail Corp. v. Director, Div. of Taxation, 18 N.J.Tax 291 (Tax 1999), aff'd, 19 N.J.Tax 378 (Tax 2001). There, the plaintiff omitted a building from the information return it was statutorily obligated to file with the Director. The purpose of the return was to list property *559 subject to taxation under the Railroad Tax Law. The plaintiff attempted to remedy the omission more than eight months after the filing of the return and almost one month after expiration of the statutory deadline for the Director to determine the classification and taxable value of railroad property. Id. at 298. The Tax Court relied on Interstate 78, supra, and Wishnick, supra, in holding that (a) the information return was binding, (b) the omission of the building precluded its taxation as a railroad property, and (c) the plaintiff’s efforts to remedy the omission were too late. Id. at 299-302. The Appellate Division affirmed, citing the Tax Court’s reliance on Consolidated Rail Corp., supra, 19 N.J.Tax at 389.
 Two underlying considerations are common to all of the foregoing decisions. First, the courts have regarded a document filed by a taxpayer, pursuant to a statutory requirement, as establishing the basis for examination by the appropriate governmental official or agency of the taxpayer’s claims. Second, because the governmental official or agency has a statutorily limited time period to complete analysis of the taxpayer’s filing and make any necessary inspections or investigations, the courts have refused to permit a taxpayer to amend a filing in an untimely manner. Allowing a late amendment could produce unnecessary duplication of effort and expense, and possibly prejudice the ability of the official or agency’s ability to verify the taxpayer’s factual assertions. These considerations are equally applicable to plaintiffs contentions.
In its CBT returns, plaintiff elected to claim investment company status and certified that the returns were “true, correct and complete.” The filed returns provided the basis for the Director’s audit. The time period for completion of the audit and imposition of additional assessments was limited by statute. That this time period, previously five years and now four years, is substantially longer than the time period for examination of farmland assessment applications or railroad tax information returns, simply reflects a legislative recognition of the volume of CBT returns and *560 the complexity of the audit process. The length of the time limit does not diminish the significance of its existence.
A taxpayer’s voluntary decision as to its filing status, set forth in its CBT return, is as binding on the taxpayer as a decision as to the basis for a claim of qualification for farmland assessment set forth in a farmland assessment application, or a claim of qualification for taxation under the Railroad Tax Law set forth in an information return. Therefore, plaintiffs argument that it is entitled to special tax treatment on a basis not contained in its tax returns is no more meritorious than the arguments that another form of special tax treatment, farmland assessment or taxation as railroad property, should be granted on a basis not disclosed in a farmland assessment application or a railroad tax information return.
Plaintiff filed its 1992 and 1993 CBT returns as an investment company, and failed to file timely amendments as a financial business corporation. The Director audited the returns based on the data they contained and in reliance on plaintiffs written certification that the returns accurately set forth the basis for, and amount of, plaintiffs tax liability. Long after expiration of (1) the time period in N.J.S.A. 54:49-6a (and N.J.S.A. 54:10A-19.1 for tax year 1992) for imposition of additional assessments, (2) the time period in N.J.S.A. 54:49-14 for filing refund claims, and (3) the time period in N.J.A.C. 18:7-1.15(e) for revoking investment company status, plaintiff may not fundamentally change its corporate feathers and, for New Jersey CBT purposes, become or be treated as a financial business corporation rather than as an investment company. Tax preferences, such as the tax treatment available to financial business corporations for the years in issue, must be strictly construed against the taxpayer. See Body-Rite Repair Co., Inc. v. Director, Div. of Taxation, 89 N.J. 540, 544, 446 A.2d 515 (1982); MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 178, 434 A.2d 620 (App.Div.1981), aff'd, 89 N.J. 216, 445 A.2d 397 (1982). Plaintiff failed to comply with a fundamental statutory requirement for the tax preference it seeks, that is, it failed to file tax returns or timely amended returns reporting *561 qualification for financial business corporation status. Plaintiff may not circumvent that requirement in the context of this appeal.
The preceding ruling does not, and should not be construed to deprive a taxpayer of a right, similar to the Director’s right, to assert alternative legal theories in tax appeal proceedings. I reject the Director’s contention that alternative legal theories may be asserted only by him. As described above, plaintiff initially contended that the Director had improperly disqualified it from investment company status. During the course of this appeal, after expiration of the statutory time limit for refund claims, and subject to considerations of due process and unfair prejudice to the Director, plaintiff could assert theories such as the unconstitutionality of the statute taxing investment companies, or exemption of some of the income which the Director seeks to tax. These types of alternative legal theories are analogous to those which the Director has been permitted to assert under Middlesex Water, supra, 181 N.J.Super. 338, 3 N.J.Tax 233, 437 A.2d 368, and Telepages, supra, 9 N.J.Tax 30.
Based on the preceding discussion and my September 21, 2002 bench opinion, I conclude that no genuine issues of material fact exist in this matter and that the Director is entitled to judgment as a matter of law. R. 4:46-2(c). Consequently, the Director’s motion for summary judgment is granted, and plaintiffs cross-motion for summary judgment is denied.

 The CBT Act is codified as NJ.S.A. 54:10A-1 to -41.

 This statute was amended by L. 1992, c. 175, § 21, effective July 1, 1993, to delete the five-year period and incorporate the provisions of the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to:53-18, particularly N.J.S.A. 54:49-6b, which reduced the period for additional assessment to four years from thé date a tax return is filed.

 The time period was two years from the date of payment of tax until extended, by L. 1992, c. 175, § 5, effective July 1, 1993, to four years from the date of payment of tax.

 Both percentages were changed to 40% by L. 2002, c. 40, § 6, effective July 2, 2002.

 This provision was deleted by L. 1995, c. 418, § 1, effective January 10, 1996.