HOPKINS, J. T. C.
Plaintiff has appealed from a final determination of the defendant wherein additional New Jersey Corporation Business taxes were asserted against it for the taxable years 1972 through 1975. Those amounts are as follows:
1972 1973 1974 1975
Underpayment of tax $3,986.22 $6,063.66 $ 8,002.47 $ 9,471.59
Interest to 7/15/78 1,679.12 2,190.89 2,458.88 2,083.59
Total $5,665.34 $8,254.55 $10,461.35 $11,555.18
Grand total $35,936.42
Plaintiff’s position is that the taxes were erroneously assessed as it is an exempt organization within the provisions of N.J.S.A. 54:10A-3. This claim of exemption is based on the argument that plaintiff was mistakenly incorporated as a “pecuniary for-profit” corporation under Title 14A of the New Jersey Revised Statutes when it had intended to be incorporated as a nonprofit corporation under Title 15 of the New Jersey Revised Statutes. Further, it has always operated as a nonprofit corporation.
In 1969 Ukranian National Association, a tax exempt fraternal organization which issued insurance to its members, was *328 looking for new quarters to house its expanded operations. It entered into negotiations with the elected officials of Jersey City, New Jersey, relative to acquiring certain property in a land renewal area with the purpose of constructing a building thereon. Further, it was interested in obtaining favorable tax treatment then being made available under the Fox-Lance Law, which legislation permitted the municipality to accept 15% of gross revenues in lieu of taxes for a 20-year period. In working out its arrangements with Jersey City, a new corporation was formed which was to take title to the property. With respect to the formation of this corporation, the officers of Ukranian National Association believed that the corporate name should contain the words “urban renewal” and they were obviously unconcerned as to whether the corporation should be organized as a nonprofit organization under Title 15 or as a business corporation under Title 14A. In any event, when the president discussed the matter with plaintiff’s attorney, the attorney was advised to form a corporation and to have that corporation issue 200 shares of stock. The corporation was formed pursuant to Title 14A and was authorized to issue 200 shares of stock. The stock, however, was never issued.
All contracts with the city relative to the tax abatements were in the name of plaintiff, as a Title 14A corporation. Subsequently, when the corporation began receiving Corporation Business Tax Return forms from defendant, there were discussions between its officers and their accountant as to their liability for the tax. The accountant advised them that, as a Title 14A corporation, they were required to file the returns and pay the tax. As the tax computed at that time was a relatively nominal amount, the officers did not further pursue the matter. Corporation Business Tax Returns were prepared and filed for the years 1969 through 1971 with the minimum tax of $25. For the years 1972 through 1975 the tax liability as shown on the filed returns ranged from $3,800 to $6,300. During the earlier years the accountant had recommended that the corporation be incorporated as tax exempt in order to avoid the taxes. When the tax liabilities became more than nominal, the officers began *329 to seriously question the situation. In 1975 plaintiff was reincorporated as a nonprofit corporation pursuant to Title 15 of the New Jersey Revised Statutes.
Taxpayer’s claim for exemption must satisfy N.J.S.A. 54:10A-3. A perusal of the various sections of that provision indicates that the only possible paragraph under which plaintiff might qualify is paragraph (e). It provides for an exemption from the corporate business tax for
... [n]onprofit corporations, associations or organizations established, organized or chartered, without capital stock, under the provisions of Titles 15,16 or 17 of the Revised Statutes, or under a special charter or under any similar general or special law of this or any other State, and not conducted for pecuniary profit of any private shareholders or individual;....
The statute contains separate and distinct organizational and operational requirements. Where a tax exemption statute uses words such as “organized” and “conducted” in conjunction with each other, the court should give the word “organized” a meaning which differs in substantial respect from “conducted.” Sun Herald Corp. v. Duggan, 73 F.2d 298 (2 Cir. 1934), cert. den. 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251 (1935).
The organizational requirement requires that the corporation be organized as follows:
1. Without capital stock;
2. Under provisions of Title 15,16 or 17 or under any similar general or special law.
Taxpayer’s charter and other evidence shows that it was specifically organized with capital stock at the request of its president and clearly was not organized under Title 15,16, or 17 or any similar law. Taxpayer argues that it was so organized by mistake and that it met the requirements of the statute in substance if not in form.
In Hopkins v. Neeld, 41 N.J. Super. 345, 125 A.2d 153 (App.Div.1956), the court said, in respect of a claim for tax exemption:
.. .We find no ambiguity or uncertainty in the phraseology of those statutes. In such circumstances, the court is not at liberty to infer or presume that the Legislature intended something other or different than it actually expressed in *330 the statutes in question. The statutes speak for themselves and must be construed according to their plain terms.... [at 351, 125 A.2d 153; citations omitted]
In addition:
... [Statutes granting exemptions ... are to be strictly construed against a claimant; a claimed exemption from taxation must find support in clear and unmistakable expressions of the legislative act. [Ibid.]
The permissible scope of this particular exemption was specifically discussed in Pine Grove Manor v. Taxation Div. Director, 68 N.J.Super. 135, 171 A.2d 676 (App.Div.1961). There the taxpayer had been organized under a Maryland nonstock corporation statute and it argued that it was organized under a law similar to Title 15. While taxpayer pointed out the similarities between the two statutes, the court found that the essential difference was that a corporation organized under the Maryland law was not prohibited from making a pecuniary profit. It stated:
... Indeed, it could be urged that there are many similarities between the New Jersey Title 15, under which nonprofit corporations are chartered, and our General Corporation Act, known as Title 14; but there is a controlling distinction — the nonprofit element.... [at 142, 171 A.2d 676]
The court made it clear that in considering the organizational structure of the claimant, the controlling inquiry is “what authority it actually possesses and may exercise under the articles recorded.” (At 148, 171 A.2d 676, citing State ex rel. Russel v. Sweeney, 153 Ohio St. 66, 91 N.E.2d 13, 16, 16 A.L.R.2d 337 (Sup.Ct.1950)).
The Appellate Division has thus distinguished between the actual operations of the taxpayer and its organizational structure. Its organizational structure must not allow the potential for profit whatever its operation may be.
Here plaintiff has not clearly and convincingly established its right to the exemption. Its charter specifically provides for authorized capital stock, and it was not chartered, organized or established under Title 15, 16 or 17 or any similar law. Moreover, taxpayer’s charter specifically allows it to engage in a myriad of profit-making activities, such as the operation of business, industrial or commercial projects and the leasing, conveyancing and sale of real property.
*331 Plaintiff argues that its incorporation as a Title 14A corporation was akin to a clerical mistake which the court should correct. However, the facts are that its incorporators specifically desired to have capital stock authorized. Furthermore, taxpayer was initially unconcerned as to whether it was organized under Title 15 or Title 14A. It rejected its accountant’s suggestion that it change from a Title 14A corporation to a Title 15 corporation as long as the yearly tax was minimal.
At best, the actions of the taxpayer can be characterized as deliberate indifference as to its corporate form. As such, this is a situation “in which corporate officers [failed], inadvertently or otherwise, to order their business affairs so as to minimize tax consequences.” General Trading Co., v. Taxation Div. Director, 83 N.J. 122, 123, 132, 416 A.2d 37 (1980). This is not the type of mistake which may have been contemplated as correctable in General Trading. Rather, it was a voluntary business decision which should “be given its tax effect in accord with what actually occurred. . . . ” (at 136, 416 A.2d 37). General Trading distinguishes between the “true state of facts upon which the tax statute was meant to operate and the contrary ‘state of facts’ set out in the [charter which may have] . . . resulted from an inadvertent slip of the pen. . . .” (at 133, 416 A.2d 37). The latter is correctable, the former is not. The organizational focus of this tax exemption statute is on the statute pursuant to which the taxpayer was organized and whether stock was authorized. The true state of facts in this case shows that taxpayer has not satisfied either of those requirements. It was intentionally organized under Title 14A and intentionally authorized to issue capital stock.
Since strict construction is to be accorded tax exemption statutes, N.J.S.A. 54:10A-3(e) must be read to require taxpayer to specifically meet each requirement of the statute. There is no warrant to interpret the statute to allow an exemption to plaintiff under the circumstances here presented.
Accordingly, taxpayer’s claim for exemption must be denied.
*332 The Clerk of the Tax Court will enter judgment affirming the assessment of corporation business taxes for the years 1972, 1973, 1974 and 1975.