RIMM, J. T. C.
In this matter the taxpayer seeks a determination that it is not liable for tax under the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., hereinafter referred to as the act, on repairs, service and supplies for equipment which the taxpayer allegedly used solely for interstate commerce. The taxpayer also argues that sales tax should not be imposed on transactions between two related corporations. The period involved was July 1, 1973 through June 30, 1976. The taxpayer’s petition was originally filed with the Division of Tax Appeals and transferred to the Tax Court by operation of law. N.J.S.A. 2A:3A-26.
Although the named plaintiff is Atlantic City Airlines, Inc., the present party in interest is Southern Jersey Airways, Inc., a New Jersey corporation, hereafter designated as SJA, which has its principal place of business at Bader Field, Atlantic City, New Jersey. It is a fixed base operator, providing a multitude of aviation-related services: regularly scheduled airplane passenger flights; a flight school; maintenance for private aircraft and sales of gasoline and supplies to private aircraft.
In 1969 Atlantic City Airlines, Inc. was created for the purpose of replacing a regularly scheduled airline service into and out of Atlantic City provided by Allegheny Airlines. The Civil Aeronautics Board (CAB) approved the substitution of plaintiff for Allegheny Airlines and a CAB order to that effect was issued. Plaintiff became a fully regulated air carrier subject to all regulations and tariffs imposed under the authority of the CAB. Plaintiff was required to provide regularly scheduled services, was subject to a fixed rate schedule, and was required to maintain its aircraft pursuant to standards set by the Federal Aviation Administration. SJA serviced plaintiff’s requirements *101 for maintenance and repairs and sold it supplies during the times relevant to this action. In 1977 a merger was consummated between SJA and plaintiff pursuant to New Jersey law. At all times relevant to the matter before the court plaintiff and SJA had interlocking directorates. Of the six directors of SJA, five were directors of plaintiff, and those five constituted its entire board of directors.
The act provides exemption for sales of locomotives, railroad cars and other railroad rolling stock, N.J.S.A. 54:32B-8.27,[1] for sales of buses, including repair and replacement parts therefor, N.J.S.A. 54:32B-8.28, for the sales, rentals and leases of commercial motor vehicles, N.J.S.A. 54:32B-8.31, and for the sales, repairs, alterations or conversion of commercial ships, N.J.S.A. 54:32B-8.12. The taxpayer contends that these express exemptions apply by implication to aircraft used by common carriers.
Statutes granting exemptions are strictly construed against those claiming entitlement thereunder. Mal-Bros Contracting Co. v. Taxation Div. Director, 124 N.J.Super. 55, 61, 304 A.2d 750 (App.Div.1973), certif. den. 63 N.J. 554, 310 A.2d 469 (1973); Container Ring Co. v. Taxation Div. Director, 1 N.J.Tax 203, 208 (Tax Ct.1980). In application of this principle the Tax Court in Monmouth Airlines, Inc. v. Taxation Div. Director, 2 N.J.Tax 47 (Tax Ct.1980), expressly rejected a contention that the court should read into the act an exemption for sales of aircraft. The court stated that
The wording of the statute with respect to the exemption for railroad rolling stock and buses is clear and unambiguous.... [T]he court finds no basis for extending the statutory exemptions.... In 1966 when the Sale Tax Act was enacted the Legislature was well aware of the existence of airline carriers and could have specifically exempted sales of aircraft if they had intended to do so.
Recently, the Legislature has enacted N.J.S.A. 54:32B-8.35.. .which exempts the sale and repair of certain aircraft replacement parts, machinery and equipment from the sales and use tax. From the amendment of the Sales Tax Act we may presume an intent on the part of the Legislature to change the existing law. [at 58-59]
*102 Although in Monmouth Airlines, Inc. the court dealt only with the exemptions found in 'N:J:S.A. 54:32B-8.27 and 54:32B-8.28, its reasoning applies to any argument that the parts in question were exempt under either N.J.S.A. 54:32B-8.12 or 54:32B-8.32.
Plaintiff also maintains that the imposition of the tax constitutes a denial of equal protection of the law. In making its equal protection argument plaintiff contends that there is no rational basis to exclude from statutory exemption sales of supplies, maintenance and repairs to airlines engaged in interstate commerce which were not specifically exempted before February 1,1979. Plaintiff maintains that the legislative intent to exempt transactions involving common carriers is evident by the exemptions provided to those interstate industries that were present in New Jersey at the time the act was adopted. Since there was no New Jersey-based regulated air carrier in the State, the Legislature did not have to consider providing statutory exemptions to such an industry. Plaintiff thus contends that holding plaintiff’s activities outside the scope of the exemptions to the act is discrimination which violates the State and Federal Constitutions.
Since no fundamental interest or suspect class is involved here, the court must apply the “rational relation” standard. In Salorio v. Glaser, 82 N.J. 482, 414 A.2d 943 (1980), cert. den. 449 U.S. 804, 101 S.Ct. 49, 66 L.Ed.2d 7 (1980), the court explained the standard as applied in the field of taxation.
In determining whether the classification employed by the State bears a rational relation to a legitimate governmental purpose, it is important to remember that the states have been accorded great latitude in the field of taxation:
. [I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.” [Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940) (footnotes omitted) ] [at 515, 414 A. 2d 943]
In matters of taxation or exemption from taxation the Legislature may make distinctions of degree which have a *103 rational basis. When subjected to judicial scrutiny the distinctions must be presumed to rest on a rational basis if there is any conceivable state of facts which would support them, and plaintiff has the burden of demonstrating that the classification lacks any rational basis. Salorio v. Glaser, supra at 515-516, 414 A.2d 943; Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J.Super. 513, 523, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973).
In the present case there are facts to support the classifications in the statutes which are the subject of plaintiff’s argument. The Legislature may have concluded to favor bus and train mass transportation with limited exemptions. During the decade of the 1960s the rail industries were suffering from severe economic problems. Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). In Bayonne v. Palmer, 90 N.J.Super. 245, 261, 217 A.2d 141 (Ch.Div. 1966), the court said, “. . . there are consistent legislative findings that adequate commuter and passenger railroad service is essential to the welfare of the people of the State and constitutes, on a comparative basis, the most efficient means for the movement of people during rush hours.” Plaintiff here has not demonstrated that the classification lacks any rational basis.
Plaintiff also argues in its trial brief that during the pertinent times it was engaged solely in interstate commerce (contrary to the evidence that it was engaged in both interstate and intrastate commerce) regulated by a federal agency, the CAB, and was a scheduled commuter airlines. It claims that “the imposition of the tax on the transactions covered were [sjc ] incident to plaintiff’s interstate function,” and it should therefore not be liable for payment of such tax to New Jersey.
The taxpayer’s home base is in New Jersey. The tax is not unreasonably related to the benefits of government generally provided to taxpayers, and it is not discriminatory. Furthermore, the taxpayer does not claim it was subject to multiple taxation. Accordingly, the taxpayer’s argument is disposed of adversely to it by Monmouth Airlines, Inc. in which a New *104 Jersey-based commuter airlinp contested the imposition of the sales and use tax on the purchase and rental of certain aircraft parts and equipment for flights made to other states. The airline also operated a flight school at Monmouth Airport where it repaired and maintained its own aircraft. The taxpayer contended that the tax on purchases and rentals of aircraft and aircraft parts, accessories and equipment constituted an invalid burden on interstate commerce, and thus violated the Commerce Clause. The court analyzed plaintiff’s claim by reference to the four-part test enunciated in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed 2d 326 (1977), reh. den. 430 U.S. 976, 97 S.Ct. 1669, 42 L.Ed.2d 371 (1977), and said:
First, Monmouth Airport is taxpayer’s home base. Its maintenance facilities, reservation center and administrative offices are located there. This home base provides a substantial nexus with New Jersey, sufficient to meet the requirements of the nexus test.
Second, the imposition of the tax is not unreasonably related to the benefits of government generally provided to taxpayer and all other taxpayers in the state. It has been held that a sales or use tax based upon a reasonable percentage of the sale price is not unreasonably related to the benefits provided by the state. Washington Rev. Dept., 435 U.S. [734] at 737-748, 98 S.Ct. [1388] at 1392-1398 [55 L.Ed.2d 682],
Third, the New Jersey Sales and Use Tax applies to those who engage in intrastate as well as interstate commerce. N.J.S.A. 43:32B-1 et seq. Thus, the tax does not discriminate against corporations engaged in interstate commerce.
The fourth requirement is fair apportionment to local activities. The purpose of this test is to avoid multiple taxation of a transaction by the several states. There has been no showing in this case that the taxpayer has been subjected to double or multiple taxation. In fact, taxpayer concedes that it has paid no sales or use taxes on the property subject to this assessment to any other jurisdiction. [2 N.J.Tax at 50-51]
In addition, plaintiff argues that Monmouth Airlines, Inc. does not apply because the taxpayer in that case was not required to fly specific routes while plaintiff here is mandated to service certain routes by contract and by CAB order. In addition, plaintiff was under a fixed rate schedule in force during the relevant period of time. These arguments are disposed of by Braniff Airways v. Nebraska State Bd. of Equalization, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). There a Nebraska-apportioned ad valorem property tax was levied on the flight equipment of an interstate air carrier which made regularly *105 scheduled stops within the state but was not incorporated there and did not have its principal place of business or home port there. The airline argued that the federal statutes governing air commerce enacted under the commerce power preempt the field of regulation of such air commerce and preclude the tax. The majority held that the federal statutes regulating air commerce did not preclude the state tax, nor did the tax conflict with the Commerce Clause in the absence of a showing of unreasonableness of the apportionment prescribed by the statute, or a showing that the interstate carrier was discriminated against. The Constitution of the United States does not distinguish between interstate commerce and interstate commerce regulated by an agency of the Federal Government. If a tax is not an improper imposition on interstate commerce, it is not converted to an improper imposition by the regulation of the commerce by a federal agency.
A contractual obligation which now appears to be less advantageous than originally anticipated also cannot be the basis for nontaxability. General Public Loan Corp. v. Taxation Div. Director, 13 N.J. 393, 400, 99 A.2d 796 (1953). See, also, General Trading Co., Inc. v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980).
The tax assessed against Atlantic City Airlines totaled $39,070.77. Of that amount $25,102.80 represented tax due upon purchases of repair and maintenance services and supplies from Southern Jersey Airways. Plaintiff argues that since it was at all times during the period of this action the alter ego of SJA, it should not be determined to have had an independent economic existence. Plaintiff maintains that the types of transactions taxed here would not be taxable if the transaction had taken place between divisions of a single entity. Its position is that since the economic reality was that plaintiff and SJA were a single entity, the tax pursuant to N.J.S.A. 54:32B-1 et seq. takes the form of an ad valorem rather than a sales tax, and that is not within the scope of the statute.
*106 The transactions between SJA and Atlantic City Airlines are subject to taxation under' the plain terms of the act. The voluntary adoption of separate corporate existences cannot be ignored to relieve the entities of the tax consequences that necessarily flow therefrom. The act imposes a tax upon the “receipts from every retail sale of tangible personal property” and upon the “receipts from every sale” of repair or maintenance services. N.J.S.A. 54:32B-3(a) and (b)(2). The transactions are exempt from taxation only if there is an exemption expressly declaring that the receipts are not subject to tax. There is no provision in the act which exempts receipts from sales of tangible personal property and services from one corporation to another related corporation. There is also no justification for attacking the corporate structure. General Public Loan Corp. v. Taxation Div. Director, 13 N.J. 393, 401, 99 A.2d 796 (1953).
The rule established in General Trading Co., Inc. is that a taxpayer must accept the tax consequences of either a purposeful business decision or inadvertent business decision in which no thought was given to the ultimate tax consequences. In that case a corporation authorized the issuance of ten million shares of stock which resulted in a deficiency assessment of $26,369.79, plus interest. There was no identifiable business purpose for the decision to authorize ten million shares. The taxpayer characterized the choice as arbitrary and inadvertent. If the corporation had authorized 100,000 shares, there would not have been a deficiency. The Supreme Court refused to accept as dispositive an amended certificate of incorporation with a reduced authorization of 100,000 shares. The court referred to Somerset Apts., Inc. v. Taxation Div. Director, 134 N.J.Super. 550, 342 A.2d 520 (App.Div.1975), in which the court held that when a taxpayer voluntarily chooses to use the corporate structure to own property and conduct business, it cannot then deny the corporate existence to avoid the tax consequences of that choice. If a business decision has a tax effect according to what actually occurred, there is tax certainty and conformance with general business expectations. “It is not what might have *107 happened nor what the taxpayer could have done but what actually occurred that determines tax consequences.” General Trading Co., Inc., supra at 138, 416 A.2d 37. The law is that taxpayers must accept the tax consequences of their business decisions whether or not those consequences were contemplated. When business entities adopt separate corporate forms for the purpose of engaging in business, these entities must meet the tax obligations that necessarily flow from separate existence. The intercompany transactions are subject to tax.
The Clerk of the Tax Court will enter a judgment dismissing the complaint.

Previously designated as 54:32B-8(bb). Similar prior designations were N.J.S.A. 54:32B-8(cc), 54:32B-8(ff), 54:32B-8(I) for N.J.S.A. 54:32B-8.28, 54:32B-8.31 and 54:32B-8.12, respectively.