The opinion of the court was delivered by
PARRILLO, J.A.D.
Plaintiff, Chemical New Jersey Holdings, Inc., appeals from a final order of the Tax Court, which granted the Director of the New Jersey Division of Taxation (Director or Division) summary judgment, dismissing plaintiffs appeal of its tax assessment for the years 1992 and 1993. In its appeal to the Tax Court, plaintiff claimed that it had been wrongly taxed as an “investment company,” the status it originally filed under, because it was actually a “financial business corporation.” The court held that plaintiff was precluded from arguing its status as a financial business corporation because the “business decision rule” bound it by its initial filing status, and the statute of limitations for amending the original return had passed. For the following reasons, we reverse and remand for an accurate determination of plaintiffs tax liability for the years 1992 and 1993.
The essential facts are undisputed. Plaintiff is a bank holding company domiciled and with its principal place of business in New Jersey. It is a wholly-owned subsidiary of Chemical Banking Corporation (Chemical), a New York corporation. During 1992 and 1993, its principal asset was stock of its subsidiary, Chemical Bank of New Jersey, and the loans it made to the subsidiary. These loans were funded by borrowing from the parent, Chemical, and totaled $75,000,000.
Plaintiff filed Corporation Business Tax (CBT) returns for tax years 1992 and 1993 on September 23, 1993, and October 13, 1994, respectively. In each of these returns, plaintiff filed as an “invest *608 ment company” and calculated its CBT liability pursuant to the provisions of N.J.S.A. 54:10A-4(f), which defines an investment company as “any corporation whose business during the period covered by its report consisted, to the extent of at least 90% thereof of holding, investing and reinvesting in stocks, bonds, notes, mortgages, debentures, patents, patent rights and other securities for its own account____” At the time, an investment company’s tax liability was “measured by 25% of its entire net income and 25% of its entire net worth” as opposed to 100% of entire net income and 100% of entire net worth, which were the bases for taxation of most other corporate forms. N.J.S.A. 54:10A-5(d), amended by L. 2002, c. 40, § 6 (July 2, 2002).
Specifically, plaintiff claimed investment income of $7,687,500 for 1992 and $7,687,498 for 1993, derived from the interest on the loan to its subsidiary. Based on these figures, plaintiff calculated its net income to be $2,827,181 in 1992 and $3,693,503 in 1993. Because it considered itself an investment company, plaintiff then determined its tax liability by multiplying these net incomes by 25 percent, pursuant to N.J.S.A. 54:10A-5(d), as then in effect. This information was reported on Form CBT-100.
Several years later, plaintiff was audited by the Division for the years 1992,1993,1994 and 1995. As a result of the Division audit, the Director determined that plaintiff was not an investment company because it was a creator of loans and not an investor in them. Consequently, on February 11,1999, the Director assessed additional taxes in the amount of $1,197,372.23 for the years 1992, 1993 and 1994. This assessment was made as if plaintiff were a common corporation, and on the entire net income plaintiff claimed on Form CBT-100, as opposed to only 25 percent thereof. The Director relied on the income figures plaintiff claimed as an investment company without considering whether plaintiffs net income would be different if it were deemed something other than an investment company.
Plaintiff filed a timely protest on May 11, 1999. Subsequently, on November 21, 2000, the Director decided that plaintiff did qualify as an investment company for the year 1994, but not 1992 *609 or 1993, and issued a Final Corrected Determination showing additional taxes due only for the years 1992 and 1993, totaling $962,639.74.
On February 15, 2001, plaintiff appealed the Director’s determination to the Tax Court, alleging that it was improperly denied qualification as an investment company. On February 6, 2002, plaintiff amended its complaint, abandoning its claim that it should have been taxed as an investment company and asserting instead that it should have been taxed as a “financial business corporation” under N.J.S.A. 54:10A-4(m) for 1992 and 1993, in which case it would not have been liable for any tax because its net income actually amounted to a loss. In calculating its net income as a financial business coiporation, plaintiff deducted all the interest it paid to its parent corporation, which resulted in net losses of $6,896,227 in 1992 and $5,077,012 in 1993. Such substantial deductions were not allowed for investment companies or most other corporate formations. Under N.J.S.A 54:10A-4(k)(2)(E)(iii), as then in effect, a financial business coiporation could deduct all interest paid by it to an affiliate corporation when calculating net income, but corporations other than financial business corporations were generally only allowed to deduct ten percent of such interest. N.J.S.A. 54:10A-4(k)(2)(E), repealed by L. 1995, c. 418, § 1 (Jan. 10,1996).
Significantly, plaintiffs interest payments to the parent corporation are reflected in the original CBT-100 forms for those years. Plaintiff, however, did not re-file as a financial business coiporation on the appropriate form, Form BFC-1, within the applicable time period provided in N.J.A.C. 18:7-1.15(e). Likewise, plaintiff did not seek a refund within the statutory period provided in N.J.S.A 54:49-14.
Following cross-motions for summary judgment, the Tax Court, in a published opinion, ruled in favor of the Division, and dismissed plaintiffs appeal. Chemical New Jersey Holdings, Inc. v. Dir., Div. of Taxation, 20 N.J.Tax. 547 (2003). The court held that plaintiff was time-barred from pursuing a refund and was bound by its initial “business decision” to file as an investment *610 company, which precluded it from challenging the assessment on the ground that it was a financial business corporation.
Specifically, the Tax Court concluded:
A taxpayer’s decision as to filing status ... is binding on the taxpayer, and may not be disregarded or revoked in the context of tax appeal proceedings.
[Moreover] plaintiff failed to comply with a fundamental statutory requirement for the tax preference it seeks, that is, it failed to file tax returns or timely amended returns reporting qualification for financial business corporation status. Plaintiff may not circumvent that requirement in the context of this appeal.
[Id. at 556, 560-61.]
On appeal, plaintiff raises the following issues for our consideration:
I. THE TAX COURT’S FAILURE TO RULE ON THE COMPLAINT IS AN ABDICATION OF ITS STATUTORY RESPONSIBILITY.
II. THE HOLDING OF THE TAX COURT IS CONTRARY TO ITS OWN DECISIONS PERMITTING ALTERNATIVE LEGAL ARGUMENTS.
III. THE TAX COURT ERRED IN HOLDING THAT THE CHOICE OF TAX RETURN FILED BY PLAINTIFF WAS A “BINDING BUSINESS DECISION.”
IV. THE TAX COURT ERRED IN RELYING ON CASES RELATING TO THE FARMLAND ASSESSMENT ACT TO SUPPORT ITS HOLDING.
V. PLAINTIFF HAS MADE A PRIMA FACIE SHOWING THAT IT QUALIFIES AS A FINANCIAL BUSINESS CORPORATION.
Plaintiffs essential challenge is to the Tax Court’s reliance on the “business decision rule” to prevent the taxpayer from claiming financial business corporation status. Plaintiff argues that its decision to file as an investment company on Form CBT-100, instead of as a financial business corporation on Form BFC-1, was simply a ministerial determination and not a business decision within the scope of the rule. Rather, as plaintiff maintains, its binding business decision has always been the decision to borrow from its parent and lend to its subsidiary, and the necessary facts for determining its tax liability were fully and accurately provided regardless of which tax form it filed. In other words, plaintiff argues the business decision rule does not apply here because it is not requesting the Tax Court treat its substantive business decisions as something other than what they were, but rather, only an appropriate assessment in light of the Director’s re-characterization of its fundamental business practice. We find merit to the *611 argument that the business decision rule should not prevent a taxpayer from demonstrating its income under a different corporate status than the one originally claimed in good faith where the Director rejects the initial filing status and assigns a new status, while assessing taxes based on the income derived under the original one.
The business decision rule is a firmly entrenched doctrine of New Jersey tax law. General Trading Co. v. Dir., Div. of Taxation, 83 N.J. 122, 136-38, 416 A.2d 37 (1980). Under the rule, a voluntary business decision “is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.” Id. at 136, 416 A.2d 37 (quoting Comm’r v. Nat’l Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974)). As the Court stated in General Trading:
[W]hile a taxpayer is free to organize Ms affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of Ms choice, whether contemplated or not .., and may not enjoy the benefit of some other route he might have chosen to follow but did not. ‘To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.’
[Id. at 136-87, 416 A.2d 37 (citations omitted).]
Thus, in General Trading, the Court refused to ignore the taxpayer’s voluntary decision to issue ten million shares of common stock simply because the taxpayer would have incurred substantially less tax liability if it had authorized a smaller number of shares.
Cases decided under the business decision rule generally involve taxpayers who defend against an assessment by arguing that they would have less tax liability if the Director, or the court, ignored their business decision and assessed taxes as if a different decision had been made. For example, in Somerset Apartments, Inc. v. Director, Division of Taxation, 134 N.J.Super. 550, 555, 342 A.2d 520 (App.Div.1975), taxpayers urged this court to disregard their decision to form a corporation as a nominee to hold title to an apartment complex in order to consummate a loan transaction because they mistakenly believed the corporate form would be ignored for tax purposes, but we refused. Likewise, in New Jersey Hotel Holdings, Inc. v. Director, Division of Taxation, 15 *612 N.J.Tax 428, 433 (1996), the taxpayer asked the court to treat its decision to accept a deed in lieu of foreclosure as if foreclosure had actually occurred because if the taxpayer had foreclosed it would not have been liable for the sales and use tax liability of the person from whom the assets were obtained. Citing the business decision rule, however, the court declined. Id. at 434. See also, Atlantic City Airlines, Inc. v. Dir., Div. of Taxation, 4 N.J.Tax 97, 105-07 (1982); Ukranian Nat’l Urban Renewal Corp. v. Dir., Div. of Taxation, 3 N.J.Tax 326, 331 (1981).
Here, the Tax Court reasonably concluded that plaintiffs decision to file as an investment company was a business decision. The court explained:
A taxpayer’s election of filing status controls the entire taxing process. Filing status dictates the law and methodology to be employed by a taxpayer in determining tax liability, the reporting form to be used, the information to be provided, and the procedures to be followed and law to be applied in any audit by the Director. A taxpayer’s decision as to filing status, therefore, is a decision of the type contemplated by General Trading, is binding on the taxpayer, and may not be disregarded or revoked in the context of tax appeal proceedings.
[Chemical, supra, 20 N.J.Tax at 556.]
Despite plaintiffs suggestion that its choice of filing status was merely a ministerial task, the decision was clearly of significant business importance. When plaintiff filed its returns as an investment company and repeatedly characterized its loans to its subsidiary as long-term investments in the subsidiary, it presumably did so to take advantage of the preferential tax treatment N.J.S.A 54:10A-5(d) afforded investment companies. Investing in loans and issuing them as a direct party are not the same. In fact, N.J.S.A. 54:10A-4(f)(3) specifically excludes banking corporations, savings institutions, and financial business corporations from its definition of investment companies. As such, the court properly found that plaintiffs choice to file as one and not the other was a business decision.
We part company with the Tax Court, however, as to the binding nature and preclusive effect attributed to such a business decision under these particular circumstances. In our view, the “business decision rule” does not bind a taxpayer to a good faith business decision rejected by the Division or preclude assertion of *613 an alternative legal theory of tax liability in the face of such official rejection.
Traditionally, the rale operates to bar taxpayer challenges to assessments where the Director has accepted the taxpayer’s business decision and assessed the proper tax based thereon. For example, in Ukranian National, supra, the taxpayer originally decided it was a Title 14A Corporation and was taxed as such. 3 N.J.Tax at 331. Likewise, in Atlantic City Airlines, supra, the taxpayer chose to adopt a separate corporate existence rather than form a single entity with a closely related corporation, and therefore, was taxed separately from the alleged “alter ego.” 4 N.J.Tax at 105-06. See also, General Trading, supra, 83 N.J. at 136, 416 A.2d 37; New Jersey Hotel Holdings, supra, 15 N.J.Tax at 433.
Here, in contrast, plaintiff’s initial business decision to file as an investment company was ultimately rejected by the Director who assessed taxes against plaintiff as an ordinary corporation without any demonstration of its actual tax liability. Significantly, plaintiffs net income as an investment company was calculated differently than it would have been had it qualified as a financial business corporation. Yet, while denying plaintiff status as an investment company, the Director assessed tax based on the net income plaintiff claimed by virtue of that status. Although the Director only utilized the net income plaintiff actually claimed on its tax return, this figure, of course, depended upon a finding that plaintiff was an investment company. In other words, in rejecting plaintiffs business decision to file as an investment company, the Division nevertheless based its assessment on the calculations produced as a result of that business decision, and now argues the taxpayer is precluded from disregarding the very position rejected by the agency in favor of an alternate theory of tax liability. We are of the view that the reach of the “business decision rule” does not extend to such a case.
Equally inapposite are those cases, relied upon by the Tax Court, arising under the Farmland Assessment Act, in which it has been consistently held that an applicant for farmland assess *614 ment is bound by the contents of its application, in the absence of a timely amendment. Interstate 78 Office Park, Ltd. v. Tewksbury Tp., 11 N.J.Tax 172, 185 (1990); Wishnick v. Upper Freehold Tp., 15 N.J.Tax 597, 604 (1996); see also, Consolidated Rail Corp. v. Dir., Div. of Taxation, 18 N.J.Tax 291, 298-302 (1999), aff'd 19 N.J.Tax 378 (App.Div.2001). In each of these farmland assessment cases, however, the court’s decision was premised upon a finding that the taxpayer’s application described business activity substantially different than what the taxpayer actually engaged in. In Interstate 78, supra, the taxpayer stated in its application that it grew and harvested hay, when, in reality, its primary business was boarding horses. 11 N.J.Tax at 176-79. Likewise, in Wish-nick, supra, the taxpayer applied for farmland assessment on the grounds that it grew alfalfa hay but actually grew rye. 15 N.J.Tax at 598-600. Thus, when the tax assessor inspected the property, looking for alfalfa hay, he did not find evidence of any farming activity. Id. at 598. Because the court found it unduly burdensome to require the tax assessor to inquire as to whether the applicant might be engaged in some farming activity other than what was stated in the application, the taxpayer was barred from arguing that its rye farming qualified for farmland assessment. Id. at 604.
In contrast here, plaintiff has neither misstated nor omitted facts in its original filing. Nor does it rely on facts different or other than those stated on Form CBT-100. In fact, it appears that all relevant information required to claim status as a financial business corporation on Form BFC-1 is contained on Form CBT-100. And, unlike the taxpayers in the farmland assessment cases, plaintiff did not engage in a completely different business practice after filing its initial return. Rather, plaintiff has always been in the business of borrowing from its parent and lending to its subsidiary. The only difference now is the label used to characterize that business, and this is only because the Division rejected plaintiffs original characterization.
The fact that plaintiff failed to file tax returns or timely amended returns reporting qualification for financial business corporation status is not, in our view, dispositive. The issue, as we *615 see it, is not whether plaintiff may re-file and seek a refund, but whether the Director assessed the appropriate tax. As the Tax Court explained, in finding jurisdiction, “[t]he Director’s argument [to the contrary] ignores the fact that this appeal is from his action in imposing a CBT assessment on plaintiff. Plaintiff need not, as a prerequisite to asserting a factual or legal argument in support of its appeal, first submit the argument to the Director ...” Chemical, supra, 20 N.J.Tax at 553. Likewise, we are aware of no statutory mandate that plaintiff first file an amended return, once the Director determines that its original filing status was improper, before it may challenge the assessment. In any event, in this case the time period for filing an amended return had expired by the time the Division’s audit was completed and additional taxes assessed.
Indeed, a tax appeal is a de novo review in which all relevant facts must be considered, “whether or not they were previously considered by the Revenue Commissioner in making the assessment.” Middlesex Water Co. v. Dir., Div. of Taxation, 181 N.J.Super. 338, 358, 3 N.J.Tax 233, 437 A.2d 368 (1981) (quoting Mead Corp. v. Blackmon, 129 Ga.App. 526, 199 S.E.2d 839, 842 (1973)). The Tax Court’s statutory obligation is to resolve all matters in controversy between the parties. N.J.S.A. 2B:13-3(a). And, in determining the matter in controversy, it is equally clear, as the court below recognized, that alternative legal theories may be presented for the first time during a de novo tax appeal. Telepages, Inc. v. Baldwin, 9 N.J.Tax 30 (1987); Middlesex Water Co., supra, 181 N.J.Super. at 338, 3 N.J.Tax 233, 437 A.2d 368.
Thus, at the trial of plaintiffs appeal from the Division’s denial of its qualification as an investment company, the question before the Tax Court was the propriety of the Director’s assessment. To resolve the issue, plaintiffs actual corporate status in tax years 1992 and 1993 necessarily had to be established in light of the Director’s rejection of plaintiffs original claim. Following this rejection, but relying on all of the information it originally reported, plaintiff argued it should have been taxed as a financial business corporation. The issue of whether plaintiff actually *616 qualified for such treatment, therefore, was correctly before the court, and a determination on this issue should have been made.
In sum, plaintiffs initial good faith tax filing was a business decision, but because it was rejected by the Division well after a timely amended return could have been filed, we hold that the business decision rule does not operate to bind plaintiff to its original filing. In such an instance, the taxpayer must not be precluded from advocating and proving an alternative basis of tax liability before the Tax Court on appeal.
Reversed and remanded for further proceeding in accordance with this opinion.