KUSKIN, J.T.C.
Plaintiffs, Michael Kaplan and Helen Kaplan and Morris Kaplan and Sandra Lisman-Kaplan,[1] appeal from tax deficiency assessments for tax years 2002 and 2003 imposed by defendant, Director of the New Jersey Division of Taxation (“Director”) pursuant to the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to N.J.S.A 54A:9-29. The assessments against Michael Kaplan were in the sums of $60,758 for tax year 2002 and $80,901 for tax year 2003. The assessments against Morris Kaplan were in the sums of $61,345 for tax year 2002 and $82,982 for tax year 2003. All of the deficiency assessments were based on the Director’s determination that plaintiffs could not offset losses incurred in the *596 operation of two apartment complexes in Georgia against partnership income realized by them from other real estate investment properties. For the reasons set forth below, I conclude that the Director’s determination was correct.[2]
I make the following factual findings. Plaintiffs are New Jersey residents and the principals of some 75 to 100 partnerships and limited liability companies having interests in a large number of residential and commercial income producing properties. Among plaintiffs’ partnership interests was a one-third interest (one-sixth owned by each plaintiff) in an entity known as Brunswick Manor Associates which owned property in North Brunswick, New Jersey. In connection with the dissolution of that partnership, each plaintiff received a distribution of certain residential and commercial portions of the property owned by the entity. Plaintiffs agreed to sell to other former partners in Brunswick Manor Associates the residential portion of the property distributed to plaintiffs, provided that the sale could be accomplished on a tax free exchange basis under Section 1081 of the Internal Revenue Code.
Plaintiffs identified two apartment complexes in Atlanta, Georgia as the properties to be exchanged for the North Brunswick property. Their attorney and accountant advised them that, in order to comply with I.R.C. § 1031 and the regulations thereunder, ownership of the Georgia properties in their individual capacities was required because the North Brunswick property being sold was owned by them individually.[3] In order to limit their *597 liability in connection with the operations of the Georgia apartment complexes, plaintiffs elected to form single member limited liability companies as acquiring entities.[4] Two of the limited liability companies, Camelot at Buckhead I, LLC (with plaintiff Michael Kaplan as its single member) and Camelot at Buckhead II, LLC (with plaintiff Morris Kaplan as its single member) acquired, as tenants in common, a complex known as Buckhead Apartments. The other two limited liability companies, Kaplan I at Lincoln Ridge, LLC (with plaintiff Michael Kaplan as its single member) and Kaplan II at Lincoln Ridge, LLC (with plaintiff Moms Kaplan as its single member) acquired, as tenants in common, an apartment complex known as Lincoln Ridge Apartments.
Plaintiffs’ sales of the North Brunswick residential properties and acquisitions of the Georgia properties occurred in the year 2000. The purchase prices for the acquisitions were paid in whole or in part with funds received by plaintiffs in connection with their sale of the North Brunswick properties.
For tax years 2002 and 2003, each plaintiff filed a New Jersey gross income tax return in which he reported, as net rental income, under the heading “Net Gains from Rents, Royalties, Patents and Copyrights,” income received from various real estate investments and losses resulting from the operations of the two Georgia apartment complexes. Each plaintiff also reported, as “Distributive Share of Partnership Income,” the income and losses generated by a substantial number of other real estate investments. The income reported as net rental income was taxable pursuant to N.J.S.A. 54A:5-1(d), which defines as one of the sixteen discrete categories of taxable income, “net gains or net income derived from or in the form of rents, royalties, patents, and copyrights.” Item (k) of the statute describes, as a taxable *598 category of income, “distributive share of partnership income.” Under N.J.S.A. 54A:5-2, “a net loss in one category of gross income may not be applied against gross income in another category of gross income.” The decision to report the losses generated by the Georgia apartment complexes under Item (d) as net rental income, rather than under Item (k) as a distributive share of partnership income, was made by plaintiffs accountant in consultation with them. The basis for the decision was the ownership of the Georgia apartment complexes by single member liability companies as tenants in common, and not by a partnership or similar entity.
By letters dated November 14 and 15, 2005, the Director notified plaintiffs that, because of adjustments to their respective 2002 and 2003 New Jersey gross income tax returns resulting from audits, they were liable for the tax deficiencies described above. The Director’s adjustments involved: (1) recategorizing as “distributive share[s] of partnership income” under N.J.S.A. 54A:5-1(k), the income from real estate investments that plaintiffs had reported as net rental income under N.J.S.A. 54A:5-1(d); (2) continuing to treat the losses attributable to the two Georgia properties as reportable under N.J.S.A. 54A:5-1(d); and (3) disallowing the offset of the Georgia losses against the partnership income.
On January 19, 2006, pursuant to the advice of their attorney, each plaintiff filed an amended New Jersey gross income tax return in which he reported, as “Distributive Share of Partnership Income,” all of the income previously reported as Net Rental Income and the losses from the Georgia apartment complexes. Simultaneously with their filing of the amended New Jersey gross income tax returns, plaintiffs (1) filed with the State of Georgia, for each of the two Georgia apartment complexes, an initial partnership return for tax year 2002 and a final partnership return for tax year 2003, and (2) filed with the Internal Revenue Service initial and final partnership returns for tax years 2002 and 2003, respectively. These filings indicated that the “partnerships” were “Kaplan at Lincoln Ridge Apartments” and “Camelot at Buckhead Apartments.” Each return stated that a federal identi *599 fication number for the “partnership” entity had been “applied for.” However, no application had been filed, and no partnership agreement had been prepared with respect to either Kaplan at Lincoln Ridge Apartments or Camelot at Buckhead Apartments.
The 2003 partnership returns filed with the State of Georgia and the Internal Revenue Service were designated as final returns because, at the end of December 2003, Camelot at Buckhead II, LLC was merged into Camelot at Buckhead, I, LLC, and Kaplan II at Lincoln Ridge, LLC was merged into Kaplan 1 at Lincoln Ridge, LLC. Each plaintiff retained a 50% interest in each of the surviving entities. The mergers did not occur until 2003 because plaintiffs’ accountant advised them that the mergers should be deferred for a period of three years from the date of the tax free exchange in order to eliminate any questions as to the legitimacy of the exchange and the tax benefits resulting from it.
Although each of the Geoigia properties was acquired by two single member limited liability companies as tenants in common, I find that it was the intention of plaintiffs to operate the properties in the same fashion as they operated the vast majority, or perhaps all, of their real estate investments, that is, they would share in profits, share in losses, share in capital contributions, and share in the responsibility for the operation and management of the Georgia properties in the same fashion as they shared those obligations and responsibilities with respect to their other real estate investments.
Plaintiffs contend that, because of their practices and procedures with respect to the operation and management of the Georgia apartment complexes, their ownership of each complex should be treated as a partnership for New Jersey gross income tax purposes. Specifically, they assert that ownership of the complexes in the form of tenancies in common for purposes of satisfying the requirements of J.R.C. § 1031 does not preclude treatment of the tenancies in common as partnerships for New Jersey gross income tax purposes. In support of this position, plaintiffs cite the following definition of a partnership contained in N.J.S.A. 54A:1-2(h):
*600 The term “partnership” includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this act, a trust, or estate or a corporation____
Plaintiffs contend that the tenancies in common, consisting of the single member limited liability entities, constituted joint ventures or other unincorporated organizations through which they carried on the business of operating the Georgia properties. They assert that their reporting of the losses from the Georgia properties in the Net Rental Income category in their initial New Jersey gross income tax returns for tax years 2002 and 2008 should be disregarded because that categorization resulted from an error by their accountant. The accountant testified that he did not understand that the losses from the Georgia apartments could be reported as partnership losses and therefore erroneously reported them under the net rental income category in the returns. He testified that he made a similar error in plaintiffs 2001 New Jersey gross income tax returns which was not audited.
In further support of their position, plaintiffs cite a regulation promulgated under the New Jersey Corporation Business Tax Act which provides as follows:
For purposes of this section, the term “partnership” has the same meaning as is set forth under I.R.C. § 7701(a)(2) and the regulations issued thereunder. Partnerships that are not treated for federal tax purposes as pass-through entities are also not treated as pass-through entities under this Section. The term “partnership” shall include limited liability companies treated as partnerships.
[N.J.A.C. 18:7-7.6(f).]
Section 7701(a)(2) of the Internal Revenue Code defines the term “partnership” as including “a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is earned on and which is not, within the meaning of this title, a trust or estate or a corporation....” This definition is identical to the Gross Income Tax Act definition of “partnership” in N.J.S. A 54A:1-2(h) quoted above. The applicable regulation under I.R.C. § 7701(a)(2) provides as follows:
Certain joint undertakings give rise to entities for federal tax purposes. A joint venture or other contractual arrangement may create a separate entity for federal tax purposes if the participants carry on a trade, business, financial operation, or *601 venture and divide the profits therefrom. For example, a separate entity exists for federal tax purposes if co-owners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. Nevertheless, a joint undertaking merely to share expenses does not create a separate entity for federal tax purposes. .. Similarly, mere co-ownership of property that is maintained, kept in repair, and rented or leased does not constitute a separate entity for federal tax purposes.
[26 C.F.R. 301.7701-1(a)(2).]
The standards to be applied by a court in determining whether, in a family context, a form of ownership qualifies for partnership treatment under the Internal Revenue Code were discussed by the United States Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949). There, the Court held that an oral agreement between a father and his sons could qualify as a partnership for federal tax purposes, and described the issue as follows:
The question is ... whether, considering all the facts — the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent — the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.
[Id. at 742, 69 S.Ct. at 1214, 93 L.Ed. at 1665.]
The Supreme Court remanded the matter to the United States Tax Court for a factual determination as to whether a partnership had been created based on the factors set forth in the foregoing quotation.
The factual nature of the inquiry under the Internal Revenue Code was emphasized in the concurring opinion of Justice Frankfurter in Culbertson, where he stated as follows:
Men may put on the habiliments of a partnership whenever it advantages them to be treated as partners underneath, although in fact it may be a case of “The King has no clothes on” to the sharp eyes of the law. Since there are special temptations to appear as a partnership in order to avoid the hardships of heavy taxation, the tribunal which presumably is gifted with superior discernment in differentiating between the real thing and the imitation — [the United States] Tax Court — will naturally be on the alert against being taken in. Therefore, a finding by the Tax Court that that which has the outward appearance of an arrangement to engage in a common enterprise is not in fact such an associated business venture ought to be respected when challenged in another court, unless such a determination is wholly without warrant in fact or, as in this case, the wrong standards for judgment have been applied.
*602 [Id. at 752, 69 S.Ct. at 1219, 93 L.Ed. at 1670.]
Plaintiffs cite two decisions of the United States Tax Court in support of their contentions. In Gusick v. Commissioner, 76 T.C.M. (CCH) 241 (1998), the taxpayer was one of three individuals who acquired, operated, and managed rental real estate properties. The taxpayer contended that, although no partnership agreement was prepared, his interest in the partnership entity that owned the property was fifty percent and not one-third and, therefore, he was entitled to deduct fifty percent of the property expenses in determining his federal income tax liability. The Commissioner disputed the existence of a partnership. The court cited the well-established principle that “[w]hether a valid partnership exists for Federal income tax purposes is governed by Federal law,” citing Commissioner v. Culbertson and other authorities. The court held, consistent with Culbertson, that the issue of whether a partnership was formed was a question of fact and that the absence of a written partnership agreement was not fatal to the existence of the partnership entity. Similarly, in Baker v. Commissioner, 74 T.C.M. (CCH) 744 (1997), the court held that the transfer of the taxpayer’s interest was a transfer of a partnership interest generating a capital loss even though no partnership agreement was prepared. The taxpayer was one of four individuals who had acquired a rental real estate property. For a period of four years before the sale of the taxpayer’s interest, the individuals filed a partnership return, opened a cheeking account in the name of the entity, deposited all rental receipts in that account and, in the agreement for transfer of the interest, described the interest as a partnership interest.
As is apparent from the preceding discussion, the requirements for the existence of a partnership under the Internal Revenue Code and the applicable federal regulation are quite broad. Federal tax principles, however, are not necessarily controlling in New Jersey unless expressly adopted by our statutes or valid regulations. Smith v. Director, Div. of Taxation, 108 N.J. 19, 32-33, 527 A.2d 843 (1987) (stating that the Internal Revenue Code and New Jersey Gross Income Tax Act are “fundamentally disparate statutes” and that federal income tax concepts are *603 incorporated into the New Jersey Gross Income Tax Act only when the Legislature “did so explicitly”). As quoted above, the regulation under the Corporation Business Tax Act definition of partnership does explicitly refer to the Internal Revenue Code. However, the Director has promulgated a separate regulation defining a partnership for purposes of the Gross Income Tax Act. This regulation incorporates the definition in N.J.S.A. 54A:1-2(h) and provides as follows:
“Partnership” means and shall include a syndicate, group, pool, joint venture and any other unincorporated organization through or by means of which any business, financial operation or venture is carried on and which is not a corporation, trust or estate within the meaning of the New Jersey Gross Income Tax Act. Only entities that quality for and elect to be treated as partnerships for federal tax purposes (for example, Limited Liability Companies and Limited Liability Partnerships) and are in business shall be treated as partnerships under the Gross Income Tax Act.
[N.J.A.C. 18:35-1.3(a)(1).]
The significant portion of the regulation, for purposes of plaintiffs’ appeals, is the requirement that an entity must “elect” to be treated as a partnership for federal tax purposes in order to be treated as a partnership under the New Jersey Gross Income Tax Act. Plaintiffs have not challenged the validity of the regulation nor do I find any basis for determining that the regulation is inconsistent with N.J.S.A. 54A:1-2(h) or is otherwise unreasonable. See Smith v. Director, Division of Taxation, supra, 108 N.J. at 25-26, 527 A.2d 843 (stating that courts accord “substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing” and that the agency interpretation will prevail unless it is plainly unreasonable or “inconsistent with the statute it purports to interpret”). I conclude, therefore, that the regulation is valid.
Plaintiffs did not elect to have their two sets of single member limited liability companies treated as partnerships for federal tax purposes or for New Jersey gross income tax purposes until their filing, on January 19, 2006, of federal partnership returns and amended gross income tax returns. In their 2002 and 2003 New Jersey gross income tax returns, plaintiffs had reported their losses from the Georgia properties on the basis that the properties were owned by their single member limited liability entities as *604 tenants in common and not by a partnership entity. I find and conclude that this reporting of the ownership status of the Georgia properties was not inadvertent or erroneous. Plaintiffs made a conscious decision to acquire the Georgia properties in a form of individual ownership that would enable them to take advantage of I.R.C. § 1031 and effect a tax free exchange of properties as described above. That decision also enabled plaintiffs to avoid payment of New Jersey gross income tax on any gain that may have resulted from their sale of the North Brunswick property as part of the exchange transaction. See N.J.S.A. 54A:5-1(c) (providing that gain from the disposition of property is not subject to tax “to the extent to which nonrecognition [of the gain] is allowed for federal income tax purposes”).
I find incredible the testimony of plaintiffs accountant that he erroneously reported the losses from the Georgia properties under the net rental income category (N.J.S.A 54A:5-1(d)) as opposed to the distribution of partnership income category (N.J.S.A. 54A:5-1(k)). The accountant testified that the initial non-partnership reporting position was taken after he consulted with plaintiffs. He further testified as to the importance of maintaining non-partnership ownership status in order to secure and preserve qualification for tax free exchange treatment under I.R.C. § 1031 and that the merger of the two limited liability entities owning each of the Georgia properties was deferred until 2003 for the same reason.
In the cases discussed above, the courts dealt with the fact issue of whether taxpayers qualified to be treated as a partnership for federal tax purposes where they had failed to satisfy the formalities of formation of a partnership but acted as members of partnership entity and sought recognition as a partnership for purposes other than determining their tax liability. Here, plaintiffs omitted the formalities related to formation of partnership entities and did not treat their ownership of the Georgia properties as being in the form of partnerships for any purpose or in any context other than in connection with their efforts to reduce them New Jersey gross income tax liability. As described above, in acquiring the Georgia properties, plaintiffs intentionally sought to *605 avoid ownership as partnership entities for federal tax purposes, and sought to be considered as tenants in common in order to preserve the tax benefits under I. R. C. § 1031.
Under these circumstances, the factual inquiry described in Commissioner v. Culbertson must be conducted in the context of certain principles of law applicable to taxpayer decisions and elections relating to tax treatment. In Somerset Apartments Inc. v. Director, Division of Taxation, 134 N.J.Super. 550, 342 A.2d 520 (App.Div.1975), in order to obtain mortgage financing, seven partners owning an apartment complex formed a corporation as their nominee so that the mortgage interest rate could exceed the rate that would be allowable for a loan to individuals. The corporate plaintiff did not include the apartment complex in its assets, or in its New Jersey corporation business tax returns and did not pay any tax based on the value of the complex. When the Division of Taxation assessed corporation business tax based on the value of the complex, the corporation appealed. In affirming the Director’s assessment, the Appellate Division held as follows:
We are satisfied that the value of the apartment complex owned by petitioner was properly included in its net worth for the purpose of determining the amount of corporation business tax payable by it even though it held title to said property solely as a nominee for the benefit of others. Petitioner chose to utilize the corporate structure to enable it to obtain the necessary financing of the apartment complex. Having chosen this method of owning property and conducting business in this State, it cannot now deny its existence in order to avoid the tax consequences of our Corporation Business Tax Act.
[Id. at 555, 342 A.2d 520 (citations omitted).]
Our Supreme Court adopted and reinforced the Somerset Apartments holding in General Trading Co. v. Director, Division of Taxation, 83 N.J. 122, 416 A.2d 37 (1980), where the Court stated:
Corporate officers make business and financial decisions daily which entail tax consequences under the Corporation Business Tax Act .. Doubtless many of these choices having a greater or lesser impact than the decision now under review are made without weighing possible tax consequences in the balance. In other instances, to be sure, tax considerations inform or even motivate business decisions. In either case the degree of tax awareness observed by corporate officers in conducting their business affairs is not the linchpin of a tax statute. Kalher, as former Chief Justice Weintraub slated “it is for the taxpayer to make its business decisions in light of tax statutes rather than the other way around.”
[Id. at 134-35, 416 A.2d 37 (citations omitted).]
*606 Plaintiffs here made a conscious tax decision in electing to acquire ownership of the Georgia apartment complexes using tenancies in common, each consisting of two single member limited liability companies. They are bound by the consequences of that election. The definition of partnerships in N.J.S.A. 54A:1-2(h) and in N.J.A.C. 18:35-1.3(a)(1), although broad, does not allow taxpayers to claim the status of individual owners, as tenants in common, of a property for federal tax purposes while simultaneously claiming partnership status for New Jersey gross income tax purposes.
My conclusion that the Georgia limited liability companies should not be treated as partnerships under the Gross Income Tax Act receives support from the Uniform Partnership Law as enacted in New Jersey, N.J.S.A. 42:1A-1 to -56. The definition of a partnership in the Uniform Law is not controlling for purposes of the Gross Income Tax Act which, as discussed above, contains its own definitional provisions. However, provisions of the Uniform Law further highlight the substantive weakness of plaintiffs’ contentions that their tenancies in common constituted partnerships. Under N.J.S.A. 42:1A-10(a), a partnership consists of “the association of two or more persons to cany on as co-owners a business for profit ... whether or not the persons intend to form a partnership.” Paragraph (c)(1) of the statute provides that “joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.”
These statutory definitions do not preclude a tenancy in common from constituting a partnership, but other provisions of the partnership statutes are more troublesome in relation to plaintiffs’ contentions. For example, N.J.S.A 42:1A-11 provides that “property acquired by a partnership is property of the partnership and not of the partners individually,” and, under N.J.S.A. 42:1A-27, a partner “is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily.” Plaintiffs have asserted that, for purposes of I.R.C. § 1031, the properties in Georgia were not *607 owned by an entity but owned by them individually through their single member limited liability companies. This ownership status is contrary to the concept of a partnership and indicates that construing the single member limited liability companies as constituting partnerships is inappropriate.
Paragraph (d) of N.J.S.A. 42:1A-12 is consistent with the concepts in N.J.S.A. 42:1A-11 and N.J.S.A. 42:1A-27. This paragraph provides that:
Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person’s capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes.
[N.J.S.A 42:1A-12(d).]
Paragraph (c) of this statute, defining property as owned by a partnership when purchased with “partnership assets,” is not applicable because plaintiffs purchased the Georgia properties using money from the sale of property that had been distributed to them individually from the North Brunswick Manor partnership. Consequently, individual and not partnership assets were used to acquire the Georgia properties.
Plaintiffs cite the decision of the Appellate Division in Chemical New Jersey Holdings, Inc. v. Director, Division of Taxation, 22 N.J.Tax 606 (App.Div.2004), as supporting their position. There, the court reaffirmed the applicability of the business decision rule as set forth in General Trading but noted that cases decided under that rule “generally involved taxpayers who defend against an assessment by arguing that they would have less tax liability if the Director, or the court, ignored their business decision and assessed taxes as if a different decision had been made.” Id. at 611 (citing Somerset Apartments Inc. v. Director, Division of Taxation, supra, 134 N.J.Super. 550, 342 A.2d 520). The court also found that the decision of Chemical New Jersey Holdings to file its corporation business tax return as an investment company was a business decision, but held that its decision was not binding only because “the ‘business decision rule’ does not bind a taxpayer to a good faith business decision rejected by the Division or preclude a assertion of an alternative legal theory of tax liability in *608 the face of such official rejection.” Chemical New Jersey Holdings, Inc., supra, 22 N.J. Tax at 612-13. In further explaining its decision, the Appellate Division stated:
In other words, in rejecting plaintiffs business decision to file as an investment company, the Division nevertheless based its assessment on the calculations produced as a result of that business decision, and now argues the taxpayers are precluded from disregarding the very position rejected by the agency in favor of an alternate theory of tax liability. We are of the view that the reach of the “business decision rule” does not extend to such a case.
[Id. at 613.]
Here, plaintiffs made the precise type of election that the Appellate Division described as subject to the business decision rule, under circumstances where the Director accepted plaintiffs filing position as to the losses from the Georgia apartment complexes. The Director recategorized, as partnership distributions, other income and losses reported by plaintiff as net rental income. Plaintiffs did not challenge or dispute the recategorization and, indeed, filed amended gross income tax returns consistent with the Director’s determination except that plaintiffs sought to categorize the losses from the Georgia properties as partnership losses and not losses belonging in the net rental income category.
Plaintiffs seek the benefit of two different theories of taxation applied simultaneously. They wish to preserve, for tax years 2002 and 2003, their individual ownership status with respect to the Georgia partnership in order to preserve their qualification for a tax free exchange under I.R.C. § 1031, while demanding that the Director treat the very same ownership entities as partnerships in order to enable plaintiffs to realize a tax benefit under the Gross Income Tax Act. Plaintiffs cannot have it both ways.
The Director’s assessments are affirmed. Interest in addition to the amounts included in the assessments shall be payable to the date of payment by plaintiffs of their respective tax liabilities.

 Helen Kaplan and Sandra Lisman-Kaplan are plaintiffs in these matters because they are, respectively, the wives of Michael Kaplan and Morris Kaplan. Because Michael Kaplan and Morris Kaplan, who aie brothers, are the principals of the entities discussed in this opinion, I will refer to them together, without their wives, as “plaintiffs.”

 This opinion supplements and amends a letter opinion I issued on June 15, 2007 denying cross-motions for summary judgment because genuine issues of material fact existed, see R. 4:46-2(c), and my bench opinion of September 7, 2007 in which I made certain factual findings but did not decide the merits of these appeals. This opinion is based on the certifications and documents submitted in connection with the summary judgment motions as well as the testimony and documents presented at a plenary hearing on September 7, 2007, and my evaluation of the credibility of the witnesses.

 Under I.R.C. § 1031(a), the “taxpayer” must effect the exchange, that is, the same taxpayer must be transferor and transferee in the exchange transaction. See Chase v. Commissioner, 92 T.C. 874, 1989 WL 38262 (1989) (holding that a *597 transaction did not satisfy the requirements of § 1031(a) when a partnership sold property and individual partners acquired the “exchange" property).

 Because single member limited liability companies are disregarded entities for tax purposes, Treas. Reg. 301.7701-2(c)(2), the acquisitions by these entities did not change the identity of the taxpayer for purposes of I.R.C. § 1031(a).